[No. F054478. Fifth Dist. Dec. 23, 2008.]

JOHN HAILSTONE, Plaintiff and Respondent. v.
SAM MARTINEZ et al., Defendants and Appellants.

COUNSEL

Weinberg, Roger & Rosenfeld and David A. Rosenfeld for Defendants and Appellants.

Nevin & Absalom, Kenneth C. Absalom and Usha Viswanathan for Plaintiff and Respondent.

OPINION

LEVY, J.—Appellants, Sam Martinez, Frank Dickson, and Ron Rocha, challenge the trial court's denial of their motion to strike the defamation complaint filed by respondent, John Hailstone, as a strategic lawsuit against public participation (SLAPP) under Code of Civil Procedure[1] section 425.16. The trial court concluded that the alleged defamatory statements did not concern an issue of public interest and therefore the complaint did not arise from protected activity.

As discussed below, the trial court erred in denying the motion on that ground. The subject statements were protected under the anti-SLAPP law. Nevertheless, Hailstone established that his claim has at least minimal merit. Accordingly, the trial court's order denying appellants' motion to strike will be affirmed.

## BACKGROUND

Hailstone was employed as a senior business agent by the Teamsters Local Union No. 948 (Local 948). Local 948 represents over 10,000 cannery workers.

---

[1] All further references are to the Code of Civil Procedure unless otherwise indicated.

The Teamsters Union is a three-tiered organization. The International Brotherhood of Teamsters (IBT) is the parent union. The IBT issues charters for the formation of local unions organized by craft and/or geographic area. Each local union is affiliated with an intermediate body known as the joint council. The joint council resolves jurisdictional disputes between the affiliated unions and conducts internal union disciplinary hearings.

Local 948 is also affiliated with the Teamsters Cannery Council. The Cannery Council is an association of three local unions that was formed primarily to negotiate with California Processors, Inc. (CPI), a multiemployer association. The multiemployer collective bargaining agreement between the Cannery Council and CPI covers approximately 16,000 cannery and food processing workers in California. Hailstone served on the Cannery Council's executive board.

Under this multiemployer collective bargaining agreement, a health and welfare trust fund, the Joint Benefit Trust Fund (JBT), was established. The JBT is administered by a board composed of equal numbers of union-appointed and management-appointed trustees. By virtue of his position on the Cannery Council, Hailstone served as a trustee of the JBT.

Hailstone was also a founding member of the National Association of Business Representatives (NABR), a union representing the business agents employed by Local 948.

In June 2007, Hailstone was suspended from his employment by appellant Sam Martinez, the Local 948 secretary-treasurer, for allegedly "double dipping" into union funds. On several occasions, Hailstone had received both a mileage reimbursement from the JBT and a gas allowance from Local 948 for a business-related activity. In a confirming letter to Hailstone dated June 19, 2007, Martinez stated: "[¶] You were suspended pending further investigation because of unlawful double dipping. A recent investigation has determined that on a number of occasions you were reimbursed by the Local for expenses of attending trust meetings, while similarly being reimbursed by the Trust Fund without reimbursing the Union for those expenses. This is double dipping, which is a breach of your fiduciary duty to the Union's membership and a violation of Federal Law." Martinez sent copies of this letter to: John Hurley, the management side cochair of the JBT and the president of CPI; John Sousa, the president of the joint council; Chuck Mack, the IBT president for the western region; and the Local 948 executive board. Information regarding these alleged violations was also sent to the Department of Labor.

Martinez continued with his investigation and, in doing so, spoke with others about the alleged double dipping.

On July 10, 2007, Hailstone was terminated as a Local 948 business agent. However, this termination did not automatically affect Hailstone's other appointments. Hailstone retained his positions as a Cannery Council executive board member and as a JBT trustee.

Six days after his termination, Hailstone filed the underlying complaint for defamation against Martinez, Frank Dickson, the Local 948 president, and Ron Rocha, an IBT special representative assigned to assist Local 948. Hailstone alleged that appellants published false statements accusing Hailstone of criminal activity and breaches of fiduciary duty both orally and in writing.

Appellants responded by filing a motion to strike the defamation complaint as a SLAPP under section 425.16. Appellants argued the alleged defamatory statements concerned an issue of public interest, i.e., the misappropriation of union funds, and thus fell within the ambit of the anti-SLAPP statute. They further asserted that Hailstone could not demonstrate a probability of prevailing on the merits of the defamation action because the subject statements were privileged under both California and federal law.

The trial court concluded that appellants had failed to establish that the alleged statements were entitled to protection under section 425.16, i.e., that they were made in connection with a public issue or an issue of public interest. Accordingly the trial court denied the motion to strike. The trial court did not reach the issue of whether Hailstone had demonstrated a probability of prevailing on his claim.

## DISCUSSION

1. *The anti-SLAPP statute.*

■ Section 425.16 was enacted in 1992 to provide a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235 [83 Cal.Rptr.2d 677].) It is California's response to meritless lawsuits brought to harass those who have exercised these rights. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 644 [49 Cal.Rptr.2d 620], disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68 [124 Cal.Rptr.2d 507, 52 P.3d 685].) This type of suit, referred to under the acronym SLAPP, or strategic lawsuit against public participation, is generally brought to obtain an economic advantage over the defendant, not to vindicate

a legally cognizable right of the plaintiff. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 927 [116 Cal.Rptr.2d 187].)

When served with a SLAPP suit, the defendant may immediately move to strike the complaint under section 425.16. To determine whether this motion should be granted, the trial court must engage in a two-step process. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695].)

The court first decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 76.) The moving defendant must demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1); see *Equilon Enterprises v. Consumer Cause, Inc., supra*, 29 Cal.4th at p. 67.) If the court concludes that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

To establish the requisite probability of prevailing, the plaintiff need only have " ' "stated and substantiated a legally sufficient claim." ' " (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 88.) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Id.* at pp. 88–89.) The plaintiff need only establish that his or her claim has minimal merit to avoid being stricken as a SLAPP. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 [46 Cal.Rptr.3d 638, 139 P.3d 30].) Nevertheless, a plaintiff cannot simply rely on his or her pleadings, even if verified. Rather, the plaintiff must adduce competent, admissible evidence. (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 614 [129 Cal.Rptr.2d 546].)

The questions of whether the action is a SLAPP suit and whether the plaintiff has shown a probability of prevailing are reviewed independently on appeal. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625].) Further, the anti-SLAPP statute is to be broadly construed. (§ 425.16, subd. (a).)

2. *Appellants met their burden of demonstrating that the allegedly defamatory statements were entitled to protection under section 425.16.*

Section 425.16, subdivision (e), clarifies what speech constitutes an " 'act in furtherance of a person's right of petition or free speech under the

United States or California Constitution in connection with a public issue.' " Such speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Appellants contend that their written and oral statements were in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest.

It should first be noted that protection under section 425.16 for statements in connection with a public issue or an issue of public interest is not dependent on those statements having been made in a public forum. Rather, subdivision (e)(4) of section 425.16 applies to private communications concerning issues of public interest. (*Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1546 [33 Cal.Rptr.3d 145].)

█ Section 425.16 does not define "an issue of public interest." Nevertheless, the statute requires the issue to include attributes that make it one of public, rather than merely private, interest. (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 [2 Cal.Rptr.3d 385].) A few guiding principles can be gleaned from decisional authorities. For example, "public interest" is not mere curiosity. Further, the matter should be something of concern to a substantial number of people. Accordingly, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Additionally, there should be a degree of closeness between the challenged statements and the asserted public interest. The assertion of a broad and amorphous public interest is not sufficient. Moreover, the focus of the speaker's conduct should be the public interest, not a private controversy. Finally, a defendant charged with defamation cannot, through his or her own conduct, create a defense by making the claimant a public figure. Otherwise private information is not turned into a matter of public interest simply by its communication to a large number of people. (*Weinberg v. Feisel, supra*, 110 Cal.App.4th at pp. 1132–1133.)

Being based on case law, the precise boundaries of a public issue have not been defined. Nevertheless, in each case where it was determined that a

public issue existed, "the subject statements either concerned a person or entity in the public eye [citations], conduct that could directly affect a large number of people beyond the direct participants [citations] or a topic of widespread, public interest [citation]." (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 [130 Cal.Rptr.2d 81].)

Further, "public interest" within the meaning of the anti-SLAPP statute is not limited to governmental matters. (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 115 [1 Cal.Rptr.3d 501] (*Du Charme*).) Rather, the term has been broadly construed to include private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. (*Ibid.*)

For example, in *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 [102 Cal.Rptr.2d 205] (*Damon*), the court found that the allegedly defamatory statements about the manager of a homeowners association governing 3,000 individuals in 1,633 homes pertained to issues of public interest within that particular community. Those statements concerned the very manner in which this group would be governed, "an inherently political question of vital importance to each individual and to the community as a whole." (*Id.* at p. 479.) Similarly, in *Macias v. Hartwell* (1997) 55 Cal.App.4th 669 [64 Cal.Rptr.2d 222] (*Macias*), the court found that allegedly defamatory campaign statements made during a union election affecting 10,000 members involved a public issue. (*Id.* at pp. 673–674.)

Here, the subject statements were not made in connection with a topic, person or entity of *widespread* public interest. Rather, this case falls into the category of cases exemplified by *Damon* and *Macias* where the "First Amendment activity is connected to an issue of interest to only a limited but definable *portion* of the public; a *narrow* segment of society consisting of the members of a private group or organization—a 3,000-member homeowners association in the former, a 10,000-member union local in the latter." (*Du Charme, supra*, 110 Cal.App.4th at p. 118.)

In *Du Charme, supra*, 110 Cal.App.4th at page 119, the court held that a statement posted on a labor union's Web site announcing that the local's business manager had been removed for financial mismanagement was not made in connection with a public issue or an issue of public interest within the meaning of the anti-SLAPP statute. The court noted that although the statement was presumably of interest to the union members, it was unconnected to any discussion, debate or controversy. "Du Charme's termination was a fait accompli; its propriety was no longer at issue. Members of the local were not being urged to take any position on the matter. In fact, *no*

action on their part was called for or contemplated. To grant protection to mere informational statements, in this context, would in no way further the statute's purpose of encouraging *participation* in matters of public significance . . . ." (*Id.* at p. 118.) Accordingly, the *Du Charme* court concluded that, in order to satisfy the public issue/issue of public interest requirement in situations where the issue is of interest only to a limited, but definable portion of the public, such as a private group, organization, or community, "the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Id.* at p. 119.) This analysis has been readily adopted by other courts. (E.g., *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1468 [37 Cal.Rptr.3d 133]; *Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP* (2007) 146 Cal.App.4th 841, 848 [53 Cal.Rptr.3d 256].)

Here, based on *Du Charme*, the trial court concluded that the allegedly defamatory statements were not made in connection with a public issue or an issue of public interest. *Du Charme* is analogous to this case in that Hailstone had been suspended from union employment and Du Charme had been terminated as the union's business manager before the allegedly defamatory statements were published. However, unlike Du Charme, Hailstone's ties to the union had not been completely severed.

First, when Martinez published the "double dipping" accusations in his June 19 letter, Hailstone had merely been suspended from his employment. An investigation into this alleged illegal activity was ongoing.

More importantly, at that time, Hailstone was still a Cannery Council executive board member representing Local 948 and a JBT trustee. Under these circumstances, Hailstone's alleged misappropriation of union funds was of interest, not only to the union officials to whom the allegedly defamatory statements were made, but also to a definable portion of the public, i.e., the more than 10,000 members of Local 948. The statements were made in connection with an ongoing controversy that was significant to the Local 948 members, i.e., an investigation by Local 948's elected representatives into the possibly illegal actions of a union official who was currently serving in a fiduciary capacity as a trustee of the trust that provides health and welfare benefits to those members. (Cf. *Ruiz v. Harbor View Community Assn., supra,* 134 Cal.App.4th at p. 1470.)

Accordingly, the trial court incorrectly concluded that appellants failed to meet their burden of establishing that the allegedly defamatory statements were entitled to protection under section 425.16. Thus, this court must take

the next step in the analysis and determine whether Hailstone met his burden of establishing a probability of prevailing on the defamation complaint.

3. *Hailstone established a probability of prevailing on the defamation complaint.*

The gravamen of the complaint is appellants' accusation that Hailstone committed a crime. According to Hailstone, the June 19 letter written and published by Martinez was libelous on its face. Hailstone further asserts that appellants are liable for slander because of oral statements they each allegedly made to the effect that Hailstone had stolen from the union and had committed a federal crime. These statements are also the basis for invasion of privacy, negligent infliction of emotional distress and intentional infliction of emotional distress causes of action.

■ Appellants take the position that, because Hailstone admitted he received both allowances, the statements they made were not defamatory because they were true. However, a crime based on alleged "double dipping" requires proof of fraud. (*U.S. v. Bush* (9th Cir. 1995) 58 F.3d 482, 487.) No evidence of fraud has been presented here. Rather, Hailstone declared, and for purposes of the anti-SLAPP motion this court must accept, that this reimbursement scheme was part of his compensation package.

Appellants further argue that, whether true or not, their statements were privileged under both California and federal law. According to appellants, these statements are shielded by California's common interest privilege, the National Labor Relations Act (NLRA; 29 U.S.C. § 151 et seq.), the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA; 29 U.S.C. § 401 et seq.), and the Employee Retirement Income Security Act of 1974 (ERISA; 29 U.S.C. § 1001 et seq.).[2]

a. *The common interest privilege.*

■ Civil Code section 47 provides: "A privileged publication or broadcast is one made: [¶] . . . [¶] (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested . . . ." Thus, it extends a conditional privilege against defamatory statements made without

---

[2] At oral argument, appellants' counsel asserted that Hailstone had not presented any evidence that either Dickson or Rocha in fact made the alleged defamatory statements. Rather, according to counsel, the only evidence of the alleged defamation was the June 19, 2007, letter. However, appellants did not take this position in either the trial court or their opening brief. Therefore, we will not consider this argument in this appeal. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [72 Cal.Rptr.2d 232]; *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350].)

malice on subjects of mutual interest. (*Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1368 [7 Cal.Rptr.3d 216].) If malice is shown, the privilege is not merely overcome, it never arises. (*Ibid.*) However, if the privilege does arise, it is a complete defense. (*Id.* at p. 1369.)

In the case of the common interest privilege, malice cannot be inferred from the communication itself. (Civ. Code, § 48.) Moreover, the malice necessary to defeat a qualified privilege is "actual malice." Such malice is established by a showing that the publication was motivated by hatred or ill will toward the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights. (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413 [134 Cal.Rptr. 402, 556 P.2d 764].) However, the lack of reasonable grounds requires more than mere negligence. Malice is shown only when the negligence amounts to a reckless or wanton disregard for the truth, so as to imply a willful disregard for, or avoidance of, accuracy. (*Noel v. River Hills Wilsons, Inc., supra*, 113 Cal.App.4th at pp. 1370–1371.)

Appellants argue that in making the subject statements to union members, union employees and JBT administrators, they were communicating with persons sharing a common interest. Hailstone counters that, while these persons may have shared a common interest in knowing that Hailstone had been suspended from employment, only the individuals involved in the decision of whether to suspend or terminate Hailstone had any interest in the allegation that he had stolen union funds. However, whether the allegedly defamatory statements were made on a subject of mutual interest need not be determined at this juncture. The common interest privilege is conditional and Hailstone has made a sufficient prima facie showing of malice.

In his declaration opposing the motion to strike, Hailstone recounted past interactions and confrontations with appellants to support his claim that appellants bore him ill will. According to Hailstone, Martinez knew that Hailstone had assisted in a Department of Justice investigation concerning allegations that Martinez and his slate of candidates had engaged in illegal ballot box stuffing during the 2005 election of Local 948 officers. Further, Hailstone was a founding member of the NABR, the union that represents Local 948 business agents, and while serving as the secretary-treasurer of Local 948, Hailstone agreed to continue a NABR contract provision that required "just cause" to terminate a business agent. Hailstone stated that the existence of this "just cause" requirement angered appellants and that appellants had engaged in angry outbursts and threatening behavior toward him. Although we express no opinion on this issue, based on this evidence of animosity between the parties, a trier of fact could find that appellants' accusations of criminal conduct were motivated by hatred or ill will toward

Hailstone and therefore were made with actual malice. As noted above, a showing that the claim has minimal merit is all that is required to defeat an anti-SLAPP motion.

Hailstone also contends the circumstances surrounding appellants' publication of the defamatory statements demonstrate that appellants lacked a good faith belief in the truth of those statements. According to Hailstone, the Local 948 bylaws authorize reimbursement for both gas and mileage. Hailstone avers that, 18 months before he was suspended, he informed Martinez of these reimbursement policies. Further, Martinez approved all of the expense reimbursement claims Hailstone submitted before June 2007, including requests for reimbursement for mileage to the trust meetings and gas from Local 948. Thus, Hailstone argues, appellants' claim that they were not aware that Hailstone was receiving both a gas allowance and a mileage allowance until June 2007 is not true. Hailstone also points to the timing of the statements as evidence of appellants' reckless disregard for the truth. Hailstone notes that appellants published their accusation that he had committed a federal crime before any investigation had been made into the accuracy of that accusation and before Hailstone had been given an opportunity to respond. Again, although we express no opinion, from this evidence a trier of fact could find appellants acted with malice in that they demonstrated a reckless disregard for the accuracy of their statements.

### b. *Federal law privileges.*

██ Under the NLRA and the LMRDA, defamatory statements made in the context of a labor dispute are protected unless published with malice. (*Linn v. Plant Guard Workers* (1966) 383 U.S. 53, 64–65 [15 L.Ed.2d 582, 86 S.Ct. 657]; *Warren v. Herndon* (1981) 115 Cal.App.3d 141, 146–147 [171 Cal.Rptr. 220].) In other words, federal labor law preempts state law to the extent that the state seeks to make such statements actionable unless the defendant made them either knowing they were false or in reckless disregard of their possible falsity. (*Warren v. Herndon, supra,* 115 Cal.App.3d at pp. 146–147.)

Appellants argue that, because their statements were made on matters of union business to union officials, i.e., were made in the context of a labor dispute, Hailstone's defamation claims are preempted by federal law. However, as discussed above, Hailstone made a prima facie showing of malice. Therefore, at this point in the proceedings, appellants' defense based on the above federal privileges does not defeat Hailstone's defamation complaint.

██ Appellants further contend that, because both Martinez and Hailstone were JBT trustees, Hailstone's state defamation claim is preempted by

ERISA. ERISA preempts state law claims that relate to an employee benefit plan. (*Abraham v. Norcal Waste Systems, Inc.* (9th Cir. 2001) 265 F.3d 811, 819.) "State law 'relates to' an ERISA benefit plan if there is a 'connection with' or 'reference to' such a plan." (*Id.* at p. 820.) The "reference to" prong requires that the state law act immediately and exclusively upon ERISA plans or that the existence of ERISA plans is essential to the law's operation. (*Rutledge v. Seyfarth, Shaw, Fairweather* (9th Cir. 2000) 201 F.3d 1212, 1216.) That prong is clearly inapplicable here. In applying the "connection with" prong, the court looks to whether the state law encroaches on relationships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee. (*Abraham v. Norcal Waste Systems, Inc., supra,* 265 F.3d at pp. 820–821.)

Appellants argue that, because the defamation claim seeks to penalize an ERISA trustee's speech to other ERISA trustees and the plan administrator, it bears on ERISA regulated relationships and therefore is preempted by federal law. According to appellants, imposing state law liability on Martinez for his statements "would adversely affect the ERISA plan itself by threatening fiduciaries of the plan with personal liability for zealously performing their fiduciary obligations."

However, making defamatory statements while acting as an ERISA trustee is outside the performance of that trustee's fiduciary obligations. Further, the complaint alleges claims against the trustee personally, not against the ERISA trust. Thus, it imposes no burdens on the plan. Accordingly, Hailstone's complaint is not preempted by ERISA.

### c. *The false light, invasion of privacy, and emotional distress claims.*

Appellants contend Hailstone has not demonstrated a probability of prevailing on his claim that he was placed before the public in a false light. Appellants first argue that this false light claim is "surplusage" because the complaint also contains a specific cause of action for libel. However, an anti-SLAPP motion is not the correct vehicle for asserting this position. Rather, this argument is properly the subject of a demurrer. (Cf. *Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP, supra,* 146 Cal.App.4th at p. 849.)

Appellants also argue that liability for placing Hailstone in a false light cannot be imposed based on a constitutionally protected publication. However, as discussed above, defamatory statements are not protected.

Regarding the invasion of privacy cause of action, appellants argue that Hailstone has failed to establish that he had a legally protected privacy interest in the information pertaining to his employment. Appellants assert

that the union's disclosure of Hailstone's "double dipping" may be embarrassing to Hailstone but can hardly be considered a serious invasion of his personal privacy. However, Hailstone's complaint is not based on disclosure of the mileage and gas reimbursements. Rather, the complaint is based on appellants' accusation that Hailstone committed a crime.

Appellants further argue that Hailstone failed to properly plead the causes of action for negligent and intentional infliction of emotional distress. Again, these alleged defects are properly the subject of a demurrer, not an anti-SLAPP motion.

In sum, appellants met their burden of establishing that the allegedly defamatory statements were entitled to protection under section 425.16. Nevertheless, Hailstone established that his defamation claim has at least minimal merit. Accordingly, the order denying appellants' motion to strike must be affirmed.

## DISPOSITION

The order is affirmed. The parties shall bear their own costs on appeal.

Wiseman, Acting P. J., and Dawson, J., concurred.

A petition for a rehearing was denied January 20, 2009, and appellants' petition for review by the Supreme Court was denied April 1, 2009, S170185.