Filed 3/11/16  Certified for publication 4/6/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| COREY BAUGHN et al., | C072462 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2012-00127366-CU-BC-GDS) |
| v. | |
| DEPARTMENT OF FORESTRY AND FIRE PROTECTION, | |
| Defendant and Appellant. | |

This is an appeal from the denial of a special motion to strike under Code of Civil Procedure section 425.16, otherwise known as an anti-SLAPP motion, and an award of attorney fees to the successful plaintiff.[1]  We affirm the trial court's denial of the motion, as defendant failed to demonstrate plaintiffs' action arose from conduct taken by

---

[1]    Undesignated references to sections are to the Code of Civil Procedure.

1

defendant in furtherance of its right of speech in connection with a public issue or an issue of public interest. We reverse and remand the award of attorney fees, as the trial court relied on an improper basis for awarding fees to plaintiff.

## FACTS

Defendant California Department of Forestry and Fire Protection (Cal Fire) employed plaintiff Corey Baughn as a firefighter at its Mendocino Unit. He held the rank of captain until 2009, when Cal Fire terminated him for sexually harassing a female subordinate employee.

Baughn appealed his termination to the State Personnel Board. Before the Personnel Board considered the matter, the parties settled the dispute by written stipulation. Baughn agreed to withdraw his appeal; resign from Cal Fire; and not apply for, seek, or accept employment with Cal Fire again. In exchange, Cal Fire agreed to remove any reference to its disciplinary action from Baughn's personnel file and to accept Baughn's resignation. The Personnel Board approved the stipulation.

Baughn then worked for the Ukiah Valley Fire District (Ukiah Valley), first as a volunteer firefighter and then as a temporary employee. At the time Baughn began work at Ukiah Valley, Ukiah Valley had an agreement with Cal Fire to assign Ukiah Valley personnel to a Cal Fire facility during the winter months. As part of his job duties, Baughn would have to enter Cal Fire facilities from time to time to stage equipment and cover Ukiah Valley's northern area.

Christopher Rowney, unit chief of Cal Fire's Mendocino Unit, became aware that Baughn was working for Ukiah Valley. Rowney knew that as result of Baughn's employment duties, Baughn would likely be present in Cal Fire facilities when the victim of Baughn's earlier harassment would also be present. Concerned about this possibility,

2

Rowney wrote and hand-delivered a letter to Ukiah Valley's fire chief ordering Baughn not to be present in any Cal Fire facility.[2]

Baughn tested for permanent employment with Ukiah Valley. However, when Ukiah Valley's governing board members learned of Rowney's action, they pressured the chief to terminate Baughn, which the chief ultimately did.

Baughn and his union, plaintiff CDF Firefighters (the Union), sued Cal Fire for breach of the written settlement stipulation between it and Baughn, breach of the implied covenant of good faith and fair dealing, and intentional and negligent interference with prospective economic advantage.

Cal Fire filed an anti-SLAPP motion to strike the complaint as to the Union, but not as to Baughn. It contended the complaint arose from speech by Rowney that was protected under the anti-SLAPP statute. It also asserted the Union was not likely to succeed on the merits.

The trial court denied the motion. It concluded delivery of the letter was an act in furtherance of speech, but the speech was not protected within the scope of the anti-SLAPP statute. The speech was not protected because it did not concern a public issue or an issue of public interest, a required element under the statute. The court awarded the Union its attorney fees as the prevailing party.

Cal Fire appealed, asserting the trial court erred in denying the anti-SLAPP motion and in awarding attorney fees to the Union.

---

**2**     The body of the letter reads: "It is my understanding that one of our former employees, Corey Baughn, has been hired by the Ukiah Valley Fire District. With the hiring of Mr. Baughn comes the possibility of his presence at our CAL FIRE facilities, which then becomes an issue to our department. [¶] To remedy any potential conflict that Mr. Baughn's presence may cause, he is excluded from entering any CAL FIRE facility. This exclusion will remain in effect until you receive a written notice from me or my successor/designee to the contrary."

DISCUSSION

I

*The Anti-SLAPP Motion*

Cal Fire contends the trial court erred when it denied the anti-SLAPP motion.  It asserts plaintiffs' action arose from activity protected by the anti-SLAPP statute; namely, the writing and delivery of Rowney's letter.  Even if plaintiffs' suit arose from Rowney's decision to ban Baughn instead of the letter, Cal Fire contends the trial court still erred, as the conduct was an act in furtherance of Rowney's speech rights in connection with an issue of public interest.

We disagree with Cal Fire.  Rowney's decision and letter were not made in connection with a public issue or an issue of public interest.  They concerned only whether a former employee could access a building possibly used by a coworker he allegedly sexually harassed.  This issue concerned a very small number of people and was not a matter of public interest or controversy.  Nothing in the record indicates this was a public issue.

We review the trial court's ruling de novo.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)  We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b)(2).)  We do not weigh the evidence or determine its credibility.  Instead, we accept the Union's evidence as true and evaluate Cal Fire's evidence only to determine if it has defeated the Union's evidence as a matter of law.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

The anti-SLAPP statute provides a "procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights."  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)  The statute reads in pertinent part:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution

4

in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)[3]

Generally, we evaluate an anti-SLAPP motion using a two-step process. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) Under the first step, the defendant must show plaintiff's cause of action arose from the defendant's protected activity. If defendant satisfies the first step, we take the second step, which is to determine whether the plaintiff has made a prima facie showing of success on the merits. (*Id.* at pp. 88-89.)

We focus here on the first step. To satisfy the first step, a defendant must show plaintiff's claim is a "cause of action . . . arising from" an act defendant made "in furtherance of [defendant's] right of petition or free speech . . . in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free

---

[3]    Our Supreme Court held the anti-SLAPP statute applies to speech by a government agency or public employee. It wrote: "Whether or not the First Amendment of the federal Constitution or article I, section 2 of the California Constitution *directly* protects government speech in general or the types of communications of a municipality that are challenged here – significant constitutional questions that we need not and do not decide – we believe it is clear, in light of both the language and purpose of California's anti-SLAPP statute, that the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17, original italics.) Thus, when we refer in this decision to allegedly protected speech or protected activity by Rowney or Cal Fire, we refer to speech protected by the anti-SLAPP statute. We take no position on whether government speech is entitled to protection under the First Amendment or the California Constitution.

speech. [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, original italics.)

The anti-SLAPP statute defines the phrase " 'act in furtherance of a person's right of petition or free speech' " to include any of four different categories of protected activity. (§ 425.16, subd. (e).) A defendant shows a plaintiff's action arose from the defendant's protected activity by demonstrating the act underlying plaintiff's complaint fits at least one of the four categories spelled out in section 425.16, subdivision (e). (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78.)

Cal Fire contends plaintiffs' action challenges an act that fits a category of protected activity described in subdivision (e)(4): "any other [1] conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech [2] in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

Specifically, Cal Fire asserts the conduct that gave rise to plaintiffs' legal action was Rowney's letter. "But for this letter," Cal Fire states in its opening brief, "there would be no lawsuit . . . ." Plaintiffs' complaint alleges Cal Fire breached the settlement stipulation and committed the alleged torts "by, among other things, issuing the Exclusion Order [the letter] that prevented Baughn from being able to maintain his employment . . . ."

Cal Fire also argues the letter addressed a matter of widespread public interest – protecting public employees against sexual harassment. It asserts the letter, considered in context, was an attempt to prevent a hostile workplace in public employment. It claims the issue concerned a large group of people. Rowney was speaking on behalf of Cal Fire, a state agency with thousands of employees, and he addressed his remarks to Ukiah Valley, a public fire protection district. Moreover, the union's insertion into this action was allegedly on behalf of its 6,000 members. Additionally, Cal Fire claims Rowney's

6

conduct occurred in the context of an ongoing controversy – Cal Fire's statutory duty to prevent harassment in the workplace.

Agreeing with the trial court, we conclude Cal Fire fails to satisfy the requirements of subdivision (e)(4). It fails because Rowney's decision and letter were not made "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

The anti-SLAPP statute does not define the terms "public issue" or "issue of public interest." However, our court has held that there must be "some attributes of the issue which make it one of public, rather than merely private, interest. A few guiding principles may be derived from decisional authorities. First, 'public interest' does not equate with mere curiosity. [Citations.] Second, a matter of public interest should be something of concern to a substantial number of people. [Citation.] Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. [Citations.] Third, there should be some degree of closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient [citation]. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort "to gather ammunition for another round of [private] controversy . . . ." [Citation.] Finally, 'those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.' [Citation.] A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people. [Citation.]" (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132-1133.)

Other cases provide additional guidance. In *Du Charme v. International Brotherhood of Electrical Workers, Local 45* (2003) 110 Cal.App.4th 107, a case relied upon by the trial court, a union's former assistant business manager sued the union for wrongful termination and defamation. Plaintiff alleged defamation based on a statement posted on the union's website stating he had been removed from office for financial mismanagement. The Court of Appeal, First Appellate District, Division Two, affirmed

7

the denial of the union's anti-SLAPP motion. It held that in order to satisfy the "public issue/issue of public interest" requirement of subdivision (e)(4), "in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Id*. at p. 119, original italics.)

In *Rivero v. American Federation of State, County, and Municipal Employees, AFL–CIO* (2003) 105 Cal.App.4th 913 (*Rivero*) the plaintiff supervised eight janitors at the International House on the UC Berkeley campus. Plaintiff sued the union for distributing three documents that accused him of soliciting bribes, harassing those under his supervision, and favoring certain employees. The union filed an anti-SLAPP motion, arguing these statements involved a public issue or an issue of public interest under subdivision (e)(4). The statements did so because, in the union's words, the " 'abusive supervision of employees throughout the University of California system is an issue of particular public interest because it impacts a community of public employees numbering 17,000.' " (*Id.* at p. 919.) The First Appellate District disagreed. The statements did not satisfy subdivision (e)(4) because they concerned the supervision of a staff of eight by one who had previously received no public attention or media coverage, and the only people involved were the supervisor and his eight supervisees. (*Id.* at p. 924.) Plaintiff's supervision of "those eight individuals is hardly a matter of public interest." (*Ibid*.)

The union in *Rivero* raised arguments similar to those raised here by Cal Fire. It argued that any time a person criticized an unlawful workplace activity, the statements concerned a public issue because public policy favors such criticism. The Court of Appeal rejected this argument as overbroad: "[I]f the Union were correct, discussion of nearly every workplace dispute would qualify as a matter of public interest. We

8

conclude, instead, that unlawful workplace activity below some threshold level of significance is not an issue of public interest, even though it implicates a public policy." (*Rivero, supra,* 105 Cal.App.4th at p. 924.)

The union argued the circumstances at International House related to the union membership's generalized concern about disrespectful supervision and the broader issue of abusive supervision throughout the University of California system. (*Rivero, supra,* 105 Cal.App.4th at p. 925.) The Court of Appeal rejected this argument as well. The publications focused exclusively on the situation at International House. One was presented in a newsletter with additional articles, but the articles were not tied together to address a larger issue. The presentation indicated the union "was simply reporting the situation of International House, a situation which standing on its own has no public interest." (*Id.* at p. 926.)

The *Rivero* court also explained that merely publishing a statement did not convert the statement into a matter of public concern: "If the mere publication of information in a union newsletter distributed to its numerous members were sufficient to make that information a matter of public interest, the public-issue limitation would be substantially eroded, thus seriously undercutting the obvious goal of the Legislature that the public-issue requirement have a limiting effect." (*Rivero, supra,* 105 Cal.App.4th at p. 926.)

Our court addressed the "issue of public concern" requirement in the context of an employer's investigation into an employee's alleged sexual harassment. In *Olaes v. Nationwide Mutual Insurance Co.* (2006) 135 Cal.App.4th 1501 (*Olaes*), an insurance company's employee complained that plaintiff, also an employee, was sexually harassing her. An investigation revealed other complaints against plaintiff. The company terminated plaintiff's employment. Plaintiff sued for defamation, alleging the company falsely accused him of sexual harassment and failed to investigate adequately prior to terminating him. The company filed an anti-SLAPP motion. We affirmed the trial court's denial of the motion in part because the company had failed to show plaintiff's

9

action arose from company conduct in furtherance of speech in connection with a public issue or an issue of public interest, as required by subdivision (e)(4).

We wrote: "The public interest in the fair resolution of claims of sexual harassment is undeniable. However, . . . this general public interest does not bring a complaint alleging defamation during a sexual harassment investigation into section 425.16's ambit. [¶] . . . [¶] Here, although we agree the elimination of sexual harassment implicates a public interest, an investigation by a private employer concerning a small group of people does not rise to a public interest under section 425.16. We do not minimize the significance of the underlying investigation; we merely find a dispute among a small number of people in a workplace does not implicate a broader public interest subject to a motion to strike under section 425.16, subdivision (e)." (*Olaes, supra,* 135 Cal.App.4th at pp. 1510, 1511.)

Applying the standards articulated in the cases discussed above, we conclude Rowney's decision and letter did not further his or Cal Fire's exercise of speech concerning a public issue or a matter of public interest. The issue raised in the letter did not concern a substantial number of people. It concerned the writer, the recipient, Baughn, and his earlier victim. At the very most, it concerned the defined set of Cal Fire firefighters who would use the same facility that Baughn would use in his employment with Ukiah Valley. This was a relatively small audience.

The letter did not occur in the context of an ongoing controversy or dispute involving Baughn, or even involving sexual harassment in the workplace. There is no evidence in the record of any *ongoing* dispute regarding Baughn's employment with Cal Fire or Ukiah Valley when Rowney delivered his letter. His letter alone cannot convert a private issue into a public issue for purposes of the anti-SLAPP statute. Moreover, the letter's message does not indicate it concerns or focuses on a public issue or any kind of ongoing controversy. The letter made no reference to Cal Fire's discipline of Baughn for sexual harassment, the settlement of their dispute, or the reason for its new concern.

Indeed, it did not focus on any issue of public interest such as eliminating harassment in the workplace. It simply said having Baughn work in Cal Fire's facilities would be a problem. In addition, it appears the letter was treated in a confidential manner, as Rowney hand-delivered the letter to the Ukiah Valley chief.

Also, there is no evidence the letter occurred in the context of any ongoing controversy regarding sexual harassment in Cal Fire's workplace. As we stated in *Olaes*, we do not doubt the public interest in preventing sexual harassment in the workplace, nor do we question Cal Fire's statutory duties to prevent harassment. Cal Fire asks us to view the letter in the context of that public policy. However, a single letter written to ban a single firefighter from Cal Fire's facilities on account of past allegations of harassing a single employee (which allegations have been expunged from his personnel record) does not rise to a public interest under subdivision (e)(4). If it did, discussion of any workplace dispute, or, in this instance, posttermination discussion of any past dispute, would qualify as a matter of public interest for purposes of the anti-SLAPP statute, something the Legislature did not design the statute to do. To the extent Rowney by writing the letter was fulfilling Cal Fire's statutory duty, he was simply engaged in the daily operation of the agency applying a policy to a confidential matter. He was not exercising speech on an issue of public concern for purposes of the anti-SLAPP statute.

Cal Fire relies primarily upon *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450 (*Hecimovich*) and *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728 (*Hailstone*) to contend the letter concerned a public issue, but both cases are distinguishable. Both can be understood as applying *Du Charme*'s definition of a public issue as one that interests a definable portion of the public, such as an organization or community, and occurs in the context of an ongoing controversy where public participation should be encouraged. In both cases, and unlike in this case, the issues occurred in the context of an ongoing controversy.

11

In *Hecimovich*, plaintiff sued for breach of contract, slander, and libel after he was dismissed as the coach of a fourth grade basketball team in an afterschool program. The First Appellate District determined the plaintiff's complaint arose from a public issue because it challenged statements made by the program's coordinators, sponsors, and parents concerning plaintiff's handling of an unruly player, the suitability of his coaching style, the players' safety, and ultimately an announcement to parents that plaintiff was unfit to coach. (*Hecimovich, supra,* 203 Cal.App.4th at pp. 465-468.) Although the court did not rely upon *Du Charme* to reach its decision, concluding under the facts before it that safety in youth sports was a public issue within the SLAPP law (*id*. at p. 468), we view the case as fitting within *Du Charme's* definition of a public issue. The issue – plaintiff's ability to coach young children and keep them safe – interested a definable portion of the public (the parents and the program's organizers and sponsors) and occurred in the context of an ongoing controversy where public participation should be encouraged.

*Hailstone* also does not support Cal Fire. There, a union official accused plaintiff, a union employee and official who also served on the executive board of a multiunion council and as a trustee of an employee health trust fund, of "double dipping," or being reimbursed from multiple union accounts for the same expense. The official sent a notice of suspension to plaintiff that explained the allegations, and he sent copies of the notice to other union officials. The union eventually terminated plaintiff from employment, but plaintiff retained his other positions. Plaintiff sued for defamation. The Fifth Appellate District, applying the *Du Charme* test, concluded plaintiff's action arose from a public issue. At the time of the challenged notice, plaintiff was still employed by the union as a union official, and his alleged misappropriation of union funds was a matter of interest to the union members. The notice was also made in the context of an ongoing controversy. (*Id*. at p. 738.) As already explained, in the case before us, the contested conduct did not

concern a definable community and was not made in connection with an ongoing controversy.

In a last gasp effort, Cal Fire argues the letter qualifies for protection under subdivision (e)(2) of the anti-SLAPP statute. That provision defines an act in furtherance of a person's protected speech and petition rights in connection with a public issue to include "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

Cal Fire misapplies this statute. It asserts that if, as plaintiffs allegedly claim, this lawsuit concerns the scope of the stipulated settlement the parties reached in the Personnel Board appeal, then this suit also concerns the Personnel Board's order that imposed the stipulation on the parties, and thus "pertains to" an official proceeding. The statute, however, is limited to statements "made in connection with" an issue under consideration in a governmental body. At the time Rowney issued his letter, no governmental body was considering any issues of which Rowney's letter concerned. Baughn's appeal to the Personnel Board had been closed for months upon the Board's approval of the parties' stipulated settlement. Plaintiffs are not claiming their action arose from the Personnel Board's order or any statements submitted to the Personnel Board; they claim it arose from Rowney's decision taken months later. Nothing in the record indicates Rowney's decision and his letter were made in connection with an issue then under consideration or review by a legislative, executive, or judicial body.

Because Cal Fire failed to establish plaintiffs' action arose from the exercise of speech protected by the anti-SLAPP statute, our analysis ends at this point. If a defendant fails to establish the plaintiff's action arises from defendant's protected activity, the complaint is not subject to the anti-SLAPP statute. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550.)

13

II

*Award of Attorney Fees*

Cal Fire contends the trial court abused its discretion by awarding plaintiffs their attorney fees. We agree. The anti-SLAPP statute requires a court to award attorney fees to a plaintiff who defeats an anti-SLAPP motion only where the court determines the anti-SLAPP motion was "frivolous or is solely intended to cause unnecessary delay." (§ 425.16, subd. (c)(1).) The court misapplied this rule as it awarded fees to the Union simply because it was the prevailing party, not because it found the anti-SLAPP motion was frivolous.

A defendant who wins an anti-SLAPP motion is entitled to fees as the prevailing party, but a successful plaintiff is not. A plaintiff must also establish the anti-SLAPP motion was frivolous or brought solely to cause delay. Because the court awarded fees on an improper basis, it abused its discretion. We remand this matter to the trial court to reconsider the issue of attorney fees under the anti-SLAPP statute.

DISPOSITION

The order denying Cal Fire's anti-SLAPP motion against the Union is affirmed. The order awarding attorney fees to the Union is reversed and the mater remanded for further consideration of the Union's request for attorney fees consistent with this opinion. Costs on appeal are awarded to plaintiffs. (Cal. Rules of Court, rule 8.278(a).)

        NICHOLSON      , Acting P. J.

We concur:

      ROBIE          , J.

      HOCH          , J.

Filed 4/6/16

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| COREY BAUGHN et al., | C072462 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2012-00127366-CU-BC-GDS) |
| v. | |
| DEPARTMENT OF FORESTRY AND FIRE PROTECTION, | CERTIFICATION FOR PUBLICATION |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed in part and reversed in part.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Senior Assistant Attorney General, Miguel A. Neri and Austin J. Cattermole, Deputy Attorneys General, for Defendant and Appellant.

Carroll, Burdick & McDonough, Gary M. Messing, Jason H. Jasmine, and Lina Balciunas Cockrell for Plaintiffs and Respondents.

THE COURT:

For good cause it now appears that the opinion in the above-captioned case filed herein on March 11, 2016, should be published in the Official Reports.  It is so ordered.

FOR THE COURT:


    NICHOLSON    , J.



    ROBIE    , J.



    HOCH    , J.

2