[No. B212719. Second Dist., Div. Five. Apr. 26, 2010.]

USA WASTE OF CALIFORNIA, INC., Cross-complainant and Respondent,
v.
CITY OF IRWINDALE, Cross-defendant and Appellant.

Counsel

Aleshire & Wynder, Fred Galante and Anthony R. Taylor for Cross-defendant and Appellant.

Slovak, Baron & Empey and Shaun M. Murphy for Cross-complainant and Respondent.

Opinion

## MOSK, J.—

### INTRODUCTION

Cross-defendant and appellant City of Irwindale (City) appeals from the denial of its motion to strike cross-complainant and respondent USA Waste of California, Inc.'s (USA Waste) second amended cross-complaint under the anti-SLAPP (strategic lawsuit against public participation) statute, Code of Civil Procedure section 425.16,[1] which applies to the rights of freedom of speech and petition for the redress of grievances. This case involves, inter alia, whether the anti-SLAPP statute can be extended to apply to land use guidelines issued by a city. We hold that USA Waste's second amended cross-complaint against the City is based on such guidelines and is not subject to the anti-SLAPP statute. We affirm the trial court's ruling.

### BACKGROUND[2]

In about 1988, United Rock Products Corporation (United Rock), an operator of sand and gravel quarries in the City, acquired an open sand and

---

[1] References to a code section are to the Code of Civil Procedure.

[2] The parties, as do we, take their statements of the facts primarily from the second amended cross-complaint.

gravel pit consisting of approximately 65 acres of land. That pit is commonly known as "Rock Quarry Pit No. 1" (Pit No. 1). On June 28, 1998, in City Resolution No. 90-19-1192, the Irwindale City Council approved United Rock's plan for reclaiming the land consisting of Pit No. 1 and United Rock's proposed future use of the site (Reclamation Plan).[3] The City's approval purported to contain additional conditions that United Rock's parent corporation challenged in an appeal to the State Mining and Geology Board. The State Mining and Geology Board upheld the challenge in Resolution No. 91-14 to the additional conditions, rendering the approval of the Reclamation Plan unconditional.

In about 2002, United Rock began to backfill Pit No. 1 in accordance with the approved Reclamation Plan. Disputes arose between the City and United Rock, and litigation ensued. In February 2002, United Rock and the City entered into a "Standstill and Tolling Agreement" that stayed the litigation and resolved some of the parties' disputes. The Standstill and Tolling Agreement describes the permissible "fill" of Pit No. 1 and provides for a compaction rate of 90 percent or less as follows:

"The permissible fill material and compaction standards for Quarry No. 1 shall be the following: Inert material, *90% bulk density soil compaction or such lesser percent as may be approved by the City Engineer which is considered engineered and suitable for development.* Appropriate inert material shall be bulk fill material, including crushed or broken concrete, bituminous concrete and other material which arises from the excavation of roads, bridges, soil or rock and that does not contain contaminates (materials which are potentially harmful to human health or the environment). Inert materials shall only be those materials permitted by state law." (Italics added.)

During the time that United Rock backfilled Pit No. 1, it submitted reports to the City representing that it was backfilling Pit No. 1 according to the relevant requirements, including the 90 percent compaction rate. In about September 2004, JH Properties, Inc., purchased Pit No. 1 from United Rock and assigned Pit No. 1 to Irwindale Partners. As part of the assignment, Irwindale Partners agreed to be bound by various requirements concerning the backfilling of Pit No. 1, including those in the Reclamation Plan and the Standstill and Tolling Agreement.

---

[3] The second amended cross-complaint alleges that Blue Diamond Materials, the owner of Pit No. 1 prior to United Rock, submitted a reclamation plan that the City did not act upon. United Rock's reclamation plan was a supplement to that plan. The City's approval was of Blue Diamond Materials's reclamation plan and United Rock's supplement to it.

On November 9, 2004, USA Waste leased Pit No. 1 from Irwindale Partners as an inert debris fill operation. Pursuant to the lease, USA Waste agreed that its portion of the fill at Pit No. 1 would be subject to the standards and requirements set forth in the Reclamation Plan and the Standstill and Tolling Agreement. In a letter to Irwindale Partners and USA Waste dated November 8, 2004, the City affirmed its position previously communicated to USA Waste that the documents and other requirements governing the backfilling of Pit No. 1 included the Reclamation Plan (as rendered unconditional by State Mining and Geology Board Resolution No. 91-14) and the Standstill and Tolling Agreement. The letter stated, "We understand that reclamation activities in the pit are being conducted pursuant to the approved Reclamation Plan. Unless the reclamation activities change from those in the Reclamation Plan, no additional land use or grading permits will be needed for the continued reclamation of Pit No. 1." Shortly after entering into the lease, USA Waste began backfilling Pit No. 1.

On December 20, 2005, the Irwindale City Council approved by resolution the Irwindale Backfill Committee's Guidelines for Above-Water Backfilling of Open-Pit Mines (Guidelines). The Guidelines were "based on the premise that the backfilled mine sites will be developed into higher-value commercial projects such as office buildings, warehouses, light manufacturing facilities, automobile dealers, restaurants, hotels, and consumer retail outlets." The Guidelines contained detailed backfilling requirements designed to ensure the sites would support commercial building. The requirements exceeded the requirements in the Reclamation Plan and the Standstill and Tolling Agreement, and included a higher compaction rate of 93 percent.

In 2006, the City informed USA Waste that the Guidelines, including the 93 percent compaction rate, applied to Pit No. 1. The City stated that Pit No. 1 had to be backfilled in a manner that permitted the placement of a building on the finished site, even though the Reclamation Plan and the Standstill and Tolling Agreement did not so provide.

USA Waste contended that the Guidelines did not apply to Pit No. 1, but agreed to pay for engineering tests to determine whether Pit No. 1 was being filled in compliance with the Reclamation Plan. After the testing was complete, the City stated that Pit No. 1 had the following deficiencies:

"A. The United Rock portion of the fill was unacceptable because it did not meet the 90% compaction rate.

"B. The United Rock portion of the fill was unacceptable because it did not meet the new, tougher standards set forth in the Guidelines and did not meet the City's new goal that the fill ultimately be 'developable.'

"C. The USA Waste portion of the fill was unacceptable because it did not meet the new, tougher standards set forth in the Guidelines and did not meet the City's new goal that the fill ultimately be 'developable.'

"D. Two areas out of the six areas tested in the USA Waste portion of the fill did not meet the 90% compaction requirement."

In 2007, USA Waste agreed to remediate its backfill in Pit No. 1 to meet the 90 percent compaction rate in the Standstill and Tolling Agreement and presented proposals for such remediation and certification. The City rejected USA Waste's offer because such efforts by USA Waste would be meaningless unless United Rock's portion of the backfill also was remediated and because USA Waste's proposals did not meet the Guidelines' standard that the backfill be compacted to 93 percent and be developable.

On June 1, 2007, the City issued a notice of violation (NOV) to JH Properties, Inc., Irwindale Partners, and USA Waste alleging that they were in violation of the.filling standards applicable to Pit No. 1. The NOV alleged that the backfilling of Pit No. 1 failed to meet the standards that the fill be compacted at *"no less than 90%"* and be "suitable for industrial or commercial/office use." (Italics added.)

On September 12, 2007, Irwindale Partners brought an action for declaratory relief against United Rock and USA Waste seeking an adjudication of the parties' legal rights and duties arising out of USA Waste's backfilling operations at Pit No. 1 and subsequent actions of the City. On January 24, 2008, USA Waste filed a cross-complaint against Irwindale Partners and the City. On February 28, 2008, it filed its first amended cross-complaint. On September 8, 2008, it filed its second amended cross-complaint.

In the second amended cross-complaint USA Waste alleged causes of action against the City for declaratory relief, breach of contract (the Standstill and Tolling Agreement), and equitable estoppel. USA Waste alleged, "Since the issues raised by [Irwindale Partners] are inextricably intertwined with the issues raised in the NOV, USA Waste filed the Cross-Complaint in this action alleging, among other things, causes of action for Declaratory Relief, Breach of Contract, and Equitable Estoppel against the City concerning the issues and allegations set forth in the NOV."

USA Waste further alleged in its declaratory relief cause of action that the Standstill and Tolling Agreement governs its backfilling operations at Pit No. 1, whereas the City contends that the Guidelines modify the Reclamation

Plan and the Standstill and Tolling Agreement to the extent they differ. Also, the City claimed that City Resolution No. 90-19-1192 permitted it to impose the requirement that Pit No. 1 be filled in such a manner as to permit placing a building on the finished site. USA Waste sought a declaration that the rights and obligations concerning the backfilling of Pit No. 1 are set forth solely in the Reclamation Plan and the Standstill and Tolling Agreement, that under the terms of the Standstill and Tolling Agreement Pit No. 1 is to be backfilled with a compaction rate of 90 percent, or less if approved by the City Engineer; and that if the Guidelines and City Resolution No. 90-19-1192 differ from the backfilling requirements in the Reclamation Plan or the Standstill and Tolling Agreement they are of no force and effect with respect to Pit No. 1.

USA Waste, in its breach of contract cause of action, alleged that USA Waste is a successor in interest to United Rock under the Standstill and Tolling Agreement and that the City breached that agreement by imposing backfilling standards that differ substantially from the Standstill and Tolling Agreement. USA Waste further alleged that the City indicated that it would force USA Waste to stop operations and excavate all fill in Pit No. 1 and remediate the fill in Pit No. 1 to meet the higher standards. USA Waste's equitable estoppel cause of action sought to estop the City from retroactively imposing backfilling requirements not in the Reclamation Plan or the Standstill and Tolling Agreement. USA Waste also sought damages against the City.

On October 20, 2008, the City filed its SLAPP motion seeking to strike USA Waste's second amended cross-complaint. In its SLAPP motion, the City contends that USA Waste filed its second amended cross-complaint against the City because the City issued the NOV. The trial court denied the motion, ruling that the gravamen of the causes of action alleged in the second amended cross-complaint was the City's action in imposing its new Guidelines and not the issuance of the NOV. The trial court ruled that the City had not met its burden of showing that the second amended cross-complaint was based on the City's exercise of protected activity under the anti-SLAPP statute.

## DISCUSSION

The City contends that the trial court erred in denying its anti-SLAPP motion. The City argues that it engaged in protected speech in connection with an "official proceeding authorized by law," within the meaning of section 425.16, subdivision (e)(1) and (2), when it issued the NOV and that USA

Waste's second amended cross-complaint is based on the NOV. Alternatively, the City contends that if the causes of action in USA Waste's second amended cross-complaint are not sufficiently connected to the NOV, then the causes of action concern protected speech made in connection with "a public issue or an issue of public interest" within the meaning of section 425.16, subdivision (e)(4).

## A. Relevant Legal Principles and Standard of Review

■ " 'A SLAPP suit—a strategic lawsuit against public participation— seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].)"[4] (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34 [64 Cal.Rptr.3d 348].)

■ "In considering the application of the anti-SLAPP statute, courts engage in a two-step process. ' "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." ' (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712 [54 Cal.Rptr.3d 775, 151 P.3d 1185], ellipsis in original, quoting *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) ' " 'The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' [Citation.]" [Citations.]' " (*Rohde v. Wolf, supra*, 154 Cal.App.4th at pp. 34–35.)

---

[4] Section 425.16, subdivision (e) provides, "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

" ' "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." [Citation.]' (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].) Our review of the denial of a motion to strike under the anti-SLAPP statute is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30]; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*).)" (*Rohde v. Wolf, supra,* 154 Cal.App.4th at p. 35.)

█ This case involves the allegation of protected speech by a government entity. The First Amendment to the United States Constitution does not apply to government speech. (*Pleasant Grove City v. Summum* (2009) 555 U.S. ___, ___ [172 L.Ed.2d 853, 129 S.Ct. 1125, 1131].) Nevertheless, the California Supreme Court, in an opinion issued shortly after the United States Supreme Court's decision in *Pleasant Grove City v. Summum,* held that whether or not the First Amendment to the United States Constitution or article I, section 2 of the California Constitution directly protects government speech in the context of a SLAPP, "the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17 [92 Cal.Rptr.3d 286, 205 P.3d 207].)

### B. *Applicability of Anti-SLAPP Statute*

#### 1. *Not Protected Activity*

The City contends that by issuing the NOV it engaged in protected speech in connection with an "official proceeding authorized by law" within the meaning of section 425.16, subdivision (e)(1) and (2). The City further contends that the causes of action asserted in USA Waste's second amended cross-complaint are based on the NOV. We disagree. The anti-SLAPP statute does not apply to the causes of action against the City in the second amended cross-complaint.

█ "That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).) "[T]he statutory phrase 'cause of action . . . arising from'

means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*Ibid.*)

"[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. (See *Paul v. Friedman* [(2002)] 95 Cal.App.4th [853,] 866 [117 Cal.Rptr.2d 82] ['[t]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding'].) . . . [I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies (*Cotati, supra*, 29 Cal.4th at p. 79), and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494].)

Even if the issuance of the NOV is protected speech within the meaning of section 425.16,[5] the City's contention that the causes of action in the second amended cross-complaint are based on protected speech fails because those causes of action are not based on the City's issuance of the NOV. The causes of action concern whether the Reclamation Plan and the Standstill and Tolling Agreement govern the manner in which USA Waste is required to compact the fill in Pit No. 1, whether the City is bound to the Reclamation Plan and the Standstill and Tolling Agreement, and whether the City may add to or alter the requirements in the Reclamation Plan and Standstill and Tolling Agreement through enactment of the Guidelines. That is, the "principal thrust or gravamen" of USA Waste's causes of action concerns the applicable compaction standards for Pit No. 1 and not the filing of the NOV. (*Martinez v. Metabolife Internat., Inc., supra*, 113 Cal.App.4th at p. 188.) The fact that the City's issuance of the NOV may have been a factor in the filing of USA Waste's cross-action against the City does not establish that the substantive basis for the cross-action was the issuance of the NOV. (*Cotati, supra*, 29 Cal.4th at p. 78.)

The City finds significant USA Waste's statement in the second amended cross-complaint: "Since the issues raised by [Irwindale Partners] are inextricably intertwined with the issues raised in the NOV, USA Waste filed the

---

[5] See *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1225 [104 Cal.Rptr.3d 692] ("we note that suits brought by a governmental agency to enforce laws aimed at public protection are not subject to the anti-SLAPP statute").

Cross-Complaint in this action alleging, among other things, causes of action for Declaratory Relief, Breach of Contract, and Equitable Estoppel against the City concerning the issues and allegations set forth in the NOV." The City contends that USA Waste is bound by that "admission" as a matter of law and concludes that the NOV "at issue in the [second amended cross-complaint] is a protected statement under the Anti-SLAPP statute." That statement in the second amended cross-complaint makes clear that the causes of action in the second amended cross-complaint are based on the "issues raised in the NOV" and not the filing of the NOV itself. The allegation by USA Waste as to the relationship between the issues concerning the City's obligations and the allegations in the complaint by Irwindale Partners was to provide a basis for a cross-claim in the action. (See § 428.10, subd. (b) [cross-complaint against person if alleged cause of action "(1) arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause [of action] brought against him"]; *Cotati, supra,* 29 Cal.4th at p. 74 ["because City's action arose from the underlying controversy respecting the validity of City's ordinance rather than from Owners' federal lawsuit, we further conclude that City's action was not subject to a special motion to strike under section 425.6"].)

USA Waste's claims concerning the applicability of City Resolution No. 90-19-1192 and the Guidelines to Pit No. 1 are not the types of action that are within the reach of the anti-SLAPP statute. In *Graffiti Protective Coatings, Inc. v. City of Pico Rivera, supra,* 181 Cal.App.4th at page 1211, the court held that the city's anti-SLAPP motion should be denied in connection with an action seeking to invalidate a city contract as not complying with municipal laws requiring competitive bidding. The court said, "We conclude that, even if plaintiff's claims involve a public issue, they are not based on any statement, writing, or conduct by the city in furtherance of its right of free speech or its right to petition the government for the redress of grievances. Rather, plaintiff's claims are based on state and municipal laws requiring the city to award certain contracts through competitive bidding." In *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 355 [22 Cal.Rptr.3d 724], the court said, "there is nothing about [the County Retirement Board's] decision, qua governmental action, that implicates the exercise of free speech or petition." The court added that the board "was not sued based on the content of speech it has promulgated or supported, nor on its exercise of a right to petition. The action challenged consists of charging the District more for certain pension contributions than the District believes is appropriate. This is not governmental action which is speech-related." (*Id.* at p. 357.)

■ Similarly here, "the claims against the City are not based on any statement, writing, or conduct in furtherance of the City's right of petition or free speech." (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera, supra,* 181 Cal.App.4th at p. 1225.) Actions to enforce, interpret or invalidate governmental laws generally are not subject to being stricken under the anti-SLAPP statute. If they were, efforts to challenge governmental action would be burdened significantly. (*Id.* at pp. 1224–1225.)

### 2. *Not Public Issue or Issue of Public Interest*

The City argues alternatively that if we determine that the causes of action in USA Waste's second amended cross-complaint are not sufficiently connected with the NOV, then "compliance with the filling standards" alleged in the second amended cross-complaint concerns "protected speech made in connection with 'a public issue or an issue of public interest' under Section 425.16, subdivision (e)(4)." The City is mistaken.

■ As we have held, the claims in question are not based on speech within the meaning of section 425.16, but even if they were, they are not protected under that statute as being in connection with "a public issue or an issue of public interest." (§ 425.16, subd. (e).) " 'The definition of "public interest" within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity.' [Citation.]" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1233 [132 Cal.Rptr.2d 57]; see *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 [102 Cal.Rptr.2d 205].) "[T]he precise boundaries of a public issue have not been defined. Nevertheless, in each case where it was determined that a public issue existed, 'the subject statements either concerned a person or entity in the public eye [citations], conduct that could directly affect a large number of people beyond the direct participants [citations] or a topic of widespread, public interest [citation].' [Citation.]" (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 736–737 [87 Cal.Rptr.3d 347].)

■ Although actions, decisions, or enforcement undertaken by a governmental entity may be in the public interest, they are not all sufficiently connected with a public issue or matter of public interest so as to be covered by the anti-SLAPP statute, even if governmental action might be subject to the anti-SLAPP statute. ■ The essential issue in USA Waste's second amended cross-complaint concerns a private matter between USA Waste and

the City that is not a public issue or of public interest. The second amended cross-complaint does not concern the application of the backfilling standards in City Resolution No. 90-19-1192 and the Guidelines to landfill operations in the City generally. Instead, the second amended cross-complaint concerns whether the City may use the Guidelines to alter the backfilling standards for a particular landfill operation—Pit No. 1.

## CONCLUSION

The original purpose of the anti-SLAPP statute was to protect nonprofit corporations and common citizens "from large corporate entities and trade associations" in petitioning government (see Sangster, *Back SLAPP: Has the development of anti-SLAPP law turned the statute into a tool to be used against the very parties it was intended to protect?* (Sept. 2003) 26 L.A. Law. 37–38). But now it has been broadened to protect large corporations and trade associations (*ibid.*), and even governmental entities "when such entities are sued on the basis of statements or activities engaged in by the public entity or its public officials in their official capacity." (*Vargas v. City of Salinas, supra,* 46 Cal.4th at p. 17.) To extend the anti-SLAPP statute to litigation merely challenging the application, interpretation, or validity of a statute or ordinance would expand the reach of the statute way beyond any reasonable parameters.

## DISPOSITION

The order is affirmed. Respondent is awarded its costs.

Kriegler, J., concurred.

**TURNER, P. J.,** Concurring.—I concur that the burden of showing the fifth through seventh causes of action in the second amended cross-complaint has minimal merit never shifted to cross-complainant, USA Waste of California, Inc., but on slightly different grounds than my colleagues.

To begin with, the issuance of the violation notice is a written statement made in connection with an executive proceeding and an official proceeding within the meaning of Code of Civil Procedure section 425.16, subdivision (e)(1).[1] In addition, the violation notice is a written statement made in

---

[1] All future statutory references are to the Code of Civil Procedure. Section 425.16, subdivision (e)(1) and (2) states: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any

connection with an issue under consideration before an executive body or an official proceeding. (§ 425.16, subd. (e)(2).) Here, we need not discuss constitutional free expression or petition issues. This case involves the statutorily enumerated first prong grounds in section 425.16, subdivision (e)(1) and (2). And the special motion to strike remedy applies equally to public entities. (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 18 [92 Cal.Rptr.3d 286, 205 P.3d 207] ["Section 425.16, subdivision (e) does not purport to draw any distinction between (1) statements by private individuals or entities that are made in the designated contexts or with respect to the specified subjects, and (2) statements by governmental entities or public officials acting in their official capacity that are made in these same contexts or with respect to these same subjects. Although there may be some ambiguity in the statutory language, section 425.16, subdivision (e) is most reasonably understood as providing that the statutory phrase in question includes all such statements, without regard to whether the statements are made by private individuals or by governmental entities or officials." (italics omitted)]; *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 353 [22 Cal.Rptr.3d 724] ["We have no doubt that a public official or government body, just like any private litigant, may make [a special motion to strike] where appropriate."].)

Thus, if the second amended cross-complaint sought relief in the causes of action directed at the city because it acted inappropriately in issuing or enforcing the violation notice, the burden would shift to cross-complainant to make its minimal merits showing under section 425.16, subdivision (b)(2). But, as my colleagues note, the gravamen of the three challenged causes of action is not the issuance of the violation notice. The second amended cross-complaint alleges: on June 1, 2007, the City of Irwindale (the city) issued the violation notice; the violation notice misstates the compaction rate required to make the pit suitable for commercial use; the violation notice does not provide a right of appeal; outside counsel, rather than the city, issued the violation notice, which was a questionable legal action; after the violation notice was issued, a hearing request was deferred; after cross-complainant submitted a work plan in response to the violation notice, the city agreed to defer enforcement of the violation notice; and the city has never sought to enforce the cease and desist portions of the violation notice. Plaintiff, Irwindale Partners, had sued cross-complainant for declaratory relief concerning their obligations. The second amended cross-complaint alleges: "Since the issues raised by [plaintiff] are inextricably intertwined with the issues raised

written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

in the [violation notice, cross-complainant] filed the Cross-Complaint in this action alleging, among other things, causes of action for Declaratory Relief, Breach of Contract, and Equitable Estoppel against the City concerning the issues and allegations set forth in the [violation notice]." Cross-complainant alleges its claims were preserved notwithstanding the fact the city held the violation notice in abeyance. In terms of the failure to file a government claim, cross-complainant alleges the city was estopped to assert any statute of limitations because of the negotiations over the parties' rights and obligations raised by the violation notice.

The first cause of action in the second amended cross-complaint against plaintiff seeks declaratory relief. The issue that required a declaration of rights was who (plaintiff or cross-complainant) was to pay for the testing, investigation and remediation required by the city "in connection" with the violation notice. Further, the first cause of action seeks a declaration of rights "in connection" with the lease between plaintiff and cross-complainant and the violation notice. The second cause of action against plaintiff seeks contract breach damages "as a result" of the issuance of the violation notice. The third and fourth causes of action against plaintiff seek rescission and termination of the lease and damages because of the mistake of fact as to the required compaction rate and related impracticality of performance.

All of these allegations are incorporated into the fifth through seventh causes of action against the city which seek: declaratory relief concerning the standstill agreement; contract breach as to the standstill agreement; and equitable estoppel as it relates to the reclamation plan and the standstill agreement. Not a single word appears in the fifth through seventh causes of action concerning the violation notice. Cross-complainant seeks no damages from the city nor seeks any declaration of rights because of the violation notice. No doubt, material allegations in the first through fourth causes of action against plaintiff discuss damages and contractual uncertainty which result from the violation notice. And the first through fourth causes of action seek relief based in material part upon the issuance of the violation notice. But the issues before us involve the claims against the city and the language in the fifth through seventh causes of action does not challenge the violation notice. The issue is extremely close especially in the context of a liberally construed remedy. (§ 425.16, subd. (a); *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1036 [73 Cal.Rptr.3d 268].) But since the fifth through seventh causes of action in the second amended cross-complaint seek no relief against the city by reason of issuance of the violation notice, I agree with the trial court and my colleagues that the gravamen of the causes of action against the city is the compaction rate and related environmental and contract-based disputes, not the violation notice. Thus, the burden never shifted to cross-complainant to show the fifth through

seventh causes of action have minimal merit. In this respect, when the case is tried against the city, service of the violation notice is not a material issue for resolution or a basis for a damage claim except as it relates to statute of limitations issues which are not the gravamen of the fifth through seventh causes of action.

Appellant's petition for review by the Supreme Court was denied July 14, 2010, S183348.