Filed 5/3/23  Murray v. Regents of the U. of Cal. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JANÉE D. MURRAY,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant and Respondent. | C093385<br><br>(Super. Ct. No. 34-2019-00254461-CU-BC-GDS) |

Plaintiff Janée D. Murray was in her second year of medical school at the University of California Davis School of Medicine (the School) when an instructor accused her of plagiarism.  Though ultimately cleared of the charge after the School conducted an investigation, the time and energy Murray spent responding to the allegation made it more difficult to continue her studies.  Murray sued the Regents of the University of California (defendant), bringing causes of action for breach of contract and breach of implied-in-fact contract.

1

Defendant filed a motion to strike Murray's operative complaint pursuant to Code of Civil Procedure[1] section 425.16, widely known as the anti-SLAPP statute, arguing that all of Murray's claims arose out of activity the anti-SLAPP law protects: statements made in connection with issues being reviewed in an "official proceeding"—here, investigations and hearings the School conducted largely in response to the plagiarism concern. Murray opposed the motion arguing, inter alia, that defendant failed to meet its burden under the first step of the anti-SLAPP law to show her claims arose from anyone's protected speech. The trial court granted the motion.

On appeal, Murray repeats arguments she made in the trial court. Heeding our Supreme Court's directive in *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*) to pay particular attention to a defendant's burden of proof at the first step of the anti-SLAPP analysis, we agree with Murray the trial court erred in granting the anti-SLAPP motion, because at least some of Murray's claims clearly do *not* arise from defendant's protected activity, defendant failed to address the claims individually, and the trial court did not analyze the claims individually.

Accordingly, we reverse and remand with instructions to the trial court to enter a new order denying the anti-SLAPP motion.

BACKGROUND[2]

I

*Murray at Medical School*

After receiving multiple admission offers, Murray, a Black woman, chose to attend the School because of its stated values and commitment to diversity as articulated

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] The factual background is taken from the complaint, and the parties' declarations filed in support of and in opposition to the anti-SLAPP motion. (See § 425.16, subd. (b)(2) [requiring court to "consider the pleadings, and supporting and opposing affidavits stating

2

in published materials, including the School's faculty code of conduct. Relevant here, the faculty code of conduct states it is unacceptable for a faculty member to discriminate against or harass a student due to race, sex, "or for other arbitrary or personal reasons." When she enrolled in the fall of 2015, Murray signed the School's code of academic conduct as a condition of enrollment.

In a February 2017 meeting during Murray's second year of medical school, one of her instructors of record (Instructor) for a required second-year course accused Murray of plagiarism. The Instructor's plagiarism accusation apparently was based on the opinion of a third-year medical student, a "facilitator" in the course, who told the Instructor that Murray was incapable of producing the level of work reflected in the relevant assignment. Also in that meeting, the Instructor claimed Murray admitted she plagiarized and accused Murray of having a negative attitude that affected the learning environment of the course.

Murray denied the accusations, but the Instructor referred the matter to the School's committee on student promotions (promotions committee) and professionalism consultation team (professionalism committee). The promotions committee oversees the academic performance of the School's medical students and is responsible for considering and approving "remediation" plans that permit a student to convert a non-passing grade into a passing grade. The professionalism committee advises and investigates professionalism concerns involving the School's faculty, staff, and students.

Before the promotions committee approved a remediation plan and without their participation, the Instructor required Murray to begin remediating her non-passing grade in the course. And pursuant to a school policy contemplating communication between second- and third-year faculty regarding incoming third-year students, the Instructor sent

---

the facts upon which the liability or defense is based"].) We accept as true the evidence favorable to Murray. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.)

a memorandum expressing "significant concerns" with Murray to various instructors and officials at the School, explaining that Murray (1) had been referred to the professionalism committee "due to concern about frustration and negative statements" Murray made in the Instructor's course and (2) struggled to find "culturally responsive" mentors at the School.

Meanwhile, between February and April 2017, Murray had at least four meetings with the promotions committee and several meetings with the professionalism committee. Murray eventually completed a remediation plan approved by the promotions committee, receiving a passing grade in her course with the Instructor. And, in an April 2017 written report, the professionalism committee concluded Murray's challenged work product resulted from acceptable collaboration with a colleague, not plagiarism. The report recommended the School "make a concerted effort to reach out to minority students" at the School and acknowledge the "unique challenges" those students may face.

But the time Murray spent complying with the Instructor's remediation plan and meeting with the School's committees interfered with her ability to study for and pass a national exam that was a prerequisite for clinical rotations in the third year of medical school. This is despite the School's official policy, apparently shared by nearly all medical schools in the country, of setting aside a "protected" time of four to eight weeks during the spring semester of a student's second year to study for that exam.

Unable to re-enroll in the School until she passed the exam, Murray had no access to financial aid or other school resources for about two years.

II

*The Complaint and Defendant's Anti-SLAPP Motion*

Murray sued defendant, bringing causes of action for breach of contract and breach of implied-in-fact contract, alleging that defendant breached the contract (taken together, the code of academic conduct that Murray signed, and the faculty code of conduct that the Instructor presumably signed) by "fail[ing] to take necessary actions to

4

stop [the Instructor's] prohibited harassment of" her in violation of the faculty code of conduct. Specifically, defendant was aware of the Instructor's "campaign of punishment" against Murray in spring 2017, which included "attempting to falsely claim" Murray admitted to plagiarizing her work and making Murray remediate her course with the Instructor before the promotions committee hearing began, during what should have been Murray's protected study time for the national exam.

Murray further alleged she was damaged by the Instructor's efforts to "sully" her professional career and reputation by sending a memorandum to officials at the School expressing concerns about her and by the Instructor forcing her to defend herself against "baseless accusations." The Instructor caused Murray to fail the national exam "by making it impossible for [Murray] to use the protected study time she had a right to." The "likely reason" for the Instructor's harassing behavior, Murray asserted, was prejudice toward women of color.

Murray largely reiterated and incorporated by reference the foregoing allegations in her cause of action for breach of implied-in-fact contract, while alleging the School's pamphlets, website, student and faculty handbooks, "and other publications" were part of the implied-in-fact contract between her and defendant.

In March 2020, defendant demurred and filed an anti-SLAPP motion seeking to strike all of Murray's claims in the operative complaint, arguing they arose out of the School's protected activity: official proceedings associated with the School's right to evaluate and improve medical student performance, an important public interest. Defendant asserted "all of [Murray's] allegations relate[d] to the complaints and investigations into . . . plagiarism" by Murray, investigations that "qualify as 'official proceedings authorized by law' " under section 425.16, subdivision (e)(2). Therefore, defendant maintained, "[Murray's] allegations arise out of protected activity under the statute." In its anti-SLAPP motion, defendant did not address Murray's allegations

5

individually, and further argued that Murray could not establish her claims had sufficient merit under the second step of the anti-SLAPP process.

In her opposition to the anti-SLAPP motion, Murray contended defendant failed to meet its first-step burden under the statute to show her claims arose from protected activity. She argued that a claim may be stricken under the anti-SLAPP statute only if the speech or petitioning activity itself is the wrong complained of. Murray further argued that under the second step of the anti-SLAPP process, her claims had sufficient merit.

In November 2020, the trial court granted the motion, ruling defendant met its burden on the first step "to show that the conduct complained of arises out of an official proceeding" of the School. In analyzing that issue, the trial court explained it considered "the principal thrust or gravamen of" Murray's claims. On the second step, the trial court ruled Murray failed to present evidence to support a prima facie case of either claim, as Murray "ma[d]e no effort to connect any" of the evidence she submitted in her pleadings to her claims.

The trial court denied Murray leave to amend the operative complaint and did not rule on the demurrer, determining it was moot in light of the anti-SLAPP ruling.

Murray timely appealed.

DISCUSSION

I

*Legal Background*

"The anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection

6

with a public issue." (§ 425.16, subd. (b)(1).)' " (*Bonni, supra*, 11 Cal.5th at pp. 1008-1009.)

"The anti-SLAPP statute identifies four categories of protected activity. (§ 425.16, subd. (e)(1)-(4).) . . . Section 425.16, subdivision (e)(2) protects 'any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.' " (*Bonni, supra*, 11 Cal.5th at p. 1009.)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' " (*Bonni, supra*, 11 Cal.5th at p. 1009.) A claim arises from protected activity if the "alleged action[] suppl[ies] a necessary element" of the claim. (*Id.* at p. 1016.) "Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Id.* at p. 1009.)

At the first step, courts should " 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni, supra*, 11 Cal.5th at p. 1009.) And "when a plaintiff has pleaded . . . a cause of action that rests on allegations of *multiple acts*, some of which constitute protected activity and some of which do not," "courts should analyze *each claim for relief*—each act or set of acts supplying a basis for relief, of which there

may be several in a single pleaded cause of action—to determine whether the acts are protected . . . ." (*Id.* at p. 1010, italics added.)[3]

Our Supreme Court emphasized in *Bonni* that "attention to the allocation of the applicable burden of proof" is crucial, because if a cause of action has multiple claims and the "moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims." (*Bonni*, *supra*, 11 Cal.5th at p. 1011; see *ibid*. [it is not the nonmovant's burden "to make the moving party's case for it"]; *id*. at pp. 1023-1024 [explaining the moving parties did not carry their first-step burden, because "[i]n the trial court, the [moving parties] did not address [the nonmovant's] allegations *individually*" (italics added)].)

*Bonni* also explained that *Baral v. Schnitt* (2016) 1 Cal.5th 376 stands for the proposition that—whether or not an anti-SLAPP movant seeks to strike an "entire cause of action" or "merely parts of it"—courts should "take[] a claim-by-claim approach to the anti-SLAPP analysis, rather than attempting to evaluate a cause of action as a whole." (*Bonni*, *supra*, 11 Cal.5th at pp. 1010-1011; *id.* at pp. 1011-1012 [disapproving a "gravamen approach" that seeks to discern the " 'essence' of a cause of action that encompasses multiple claims"—an "almost metaphysical" endeavor; while recognizing some courts that use the "gravamen test" label nevertheless engage in the proper inquiry].)

Substantively, the court in *Bonni* held that under the anti-SLAPP statute " 'a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' " (*Bonni, supra*, 11 Cal.5th at p. 1014, quoting *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.)

---

[3] Such a cause of action has "sometimes [been] loosely referred to as a ' "mixed cause of action." ' " (*Bonni, supra*, 11 Cal.5th at p. 1010.)

8

We review the trial court's ruling de novo. (*Bonni, supra*, 11 Cal.5th at p. 1009.)

## II

### *First-Step Analysis*

Murray argues the trial court erred by concluding that "any claim associated with" the School's "internal processes" was subject to an anti-SLAPP motion to strike, failing to recognize "it is only the speech and petitioning activities in the process that are protected." Murray insists her claims are "not based upon [the Instructor's] speech but instead upon the actions" of the School: the School's "failure to require [the Instructor] to abide by the Faculty Code of Conduct," and other formal policies of the School.

Defendant argues the trial court properly struck Murray's claims pursuant to section 425.16, subdivision (e)(2) because her claims "arise from communicative acts done in connection with issues under review or consideration by official proceedings."

Heeding our Supreme Court's directive to pay particular attention to defendant's burden of proof at the first step of the anti-SLAPP analysis, we conclude the trial court erred in granting the anti-SLAPP motion, because (1) some of Murray's claims clearly do *not* arise from defendant's protected activity, (2) defendant failed to address Murray's claims individually in its anti-SLAPP motion, and (3) the trial court did not analyze each claim for relief individually to determine whether protected activity itself was the wrong complained of.[4]

A.    *"Any Other Official Proceeding"*

Relevant here, and as noted above, the statute protects "any written or oral statement or writing made in connection with an issue under consideration or review by a

_____

[4] This conclusion makes it unnecessary to reach the parties' arguments regarding the second step of the anti-SLAPP analysis. Accordingly, we express no opinion on the substantive merits of Murray's claims.

legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)

Murray appears to concede that proceedings of the promotions committee and professionalism committee at issue here were "other official proceedings authorized by law" within the meaning of section 425.16, subdivision (e)(2). In light of our conclusion the trial court erred for reasons unrelated to this issue, we accept Murray's concession for purposes of this appeal. (Cf. *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1396 & fn. 8 [administrative grievance procedure conducted pursuant to protocol established by the Regents of the University of California was an official proceeding authorized by law under the anti-SLAPP scheme].)

B.     *Murray's Claims*

We need not and do not attempt to provide an exhaustive itemization of Murray's claims. It suffices to note that both of Murray's causes of action contain some claims that clearly do not arise out of defendant's protected activity.

1.     *Breach of Contract*

In her breach of contract cause of action, Murray alleges, inter alia: the Instructor "attempt[ed] to falsely claim . . . Murray admitted to plagiarizing" her work "and ma[de] her remediate . . . course work before" the promotions committee hearing began; when the School "failed to intervene in" this "harassment" of Murray by the Instructor, defendant thereby "failed to meet its obligations under the terms of the contract"; the School "allowed [the Instructor] to harass [her] with meaningless remediation assignments, attempts to sully [her] professional career and reputation" by sending a memorandum to third-year faculty and other officials at the School expressing concerns with Murray, and "forcing her to defend herself against baseless accusations"; and, defendant "committed a material breach of the contract," the faculty code of conduct, when it allowed the Instructor to "mak[e] it impossible for [Murray] to use the protected study time she had a right to."

10

Multiple claims for relief are apparent in the aforementioned allegations of acts, and non-acts, by the Instructor and the School. Some of the claims arguably appear to arise out of oral or written statements made in connection with issues under consideration in proceedings of the promotions committee and/or professionalism committee—e.g., the Instructor's "false[] claim" that Murray admitted to plagiarizing her work, and the Instructor "forcing [Murray] to defend herself against baseless accusations." But some of the claims clearly do *not* arise out of any such statements—e.g., that defendant allowed the Instructor to harass Murray by making her remediate (1) before the promotions committee hearing began and (2) during Murray's "protected study time." These claims do not "arise from" protected activity, because oral or written statements do not supply a necessary element of either claim. (See *Bonni, supra*, 11 Cal.5th at p. 1016.)

Defendant's argument that all of Murray's breach of contract claims arise out of protected activity is unpersuasive. For example, defendant attempts to put a "communicative" gloss on Murray's allegations that the Instructor improperly forced her to remediate, asserting the Instructor's "*communications instructing* Murray to remediate" were "related to a substantive issue" being considered in promotions committee proceedings. (Italics added.) But whether the Instructor's *act* of requiring Murray to remediate[5] before promotions committee proceedings began and during Murray's protected study time might have been "related to" future promotions committee proceedings is not the operative issue. Rather, the question is whether an oral or written statement by the Instructor is a *necessary element* of any of Murray's "remediation"

---

[5] Depending on the circumstances, conduct cannot fairly be characterized as speech or expressive. (Cf. *Bonni, supra*, 11 Cal.5th at p. 1021; *ibid.* ["Treating disciplinary acts indistinguishably from speech—such that if stating a given viewpoint would warrant constitutional and anti-SLAPP protection as an exercise of free speech rights, the same protection should extend equally to any actions motivated by that viewpoint" is based on the flawed assumption "that conduct generally is tantamount to speech"].)

breach of contract claims or merely provides context to the claims. (*Bonni, supra*, 11 Cal.5th at pp. 1012, 1014.) To the extent Murray's "remediation" allegations implicate a statement by the Instructor, such a statement merely provides context. (Cf. *Ratcliff v. The Roman Catholic Archbishop of Los Angeles* (2022) 79 Cal.App.5th 982, 1005-1006 & fn. 15 [anti-SLAPP movant "mischaracterize[d] the complaint, cherry-picking allegations" that were "incidental to the actual" claim for relief; and "by putting all of its anti-SLAPP eggs in" one—unpersuasive—"basket" in the trial court, movant thereby failed to meet its first-step burden under *Bonni*].)

Further, the Instructor's decision (made before the promotions committee approved a remediation plan and without that committee's participation) to require Murray to remediate apparently occurred *outside* the relevant process and timeline contemplated by School's policies. That act, by itself, undermines defendant's argument the Instructor's conduct—even if fairly characterized as "communicative"—was "preparatory to" promotions committee proceedings. (Cf. *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285 ["Communications made in preparation for or in anticipation of . . . an . . . other official proceeding fall within the ambit of" § 425.16, subd. (e)(2)]; *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 242 ["the pertinent communication . . . was *not* made in preparation for or in anticipation of" a relevant "proceeding"].)

In sum, defendant did not address Murray's multiple claims individually in the anti-SLAPP motion, nor did the trial court in its order granting the motion and striking the entire cause of action after discerning "the principal thrust or gravamen" of Murray's claims. This was error. The trial court should have denied defendant's motion because defendant did not carry its first-step burden to identify how *each* distinct claim arose from protected activity. (See *Bonni, supra*, 11 Cal.5th at pp. 1010-1012, 1023-1024.)

2. *Breach of Implied-in-Fact Contract*

In her breach of implied-in-fact contract cause of action, Murray reiterated and incorporated by reference the allegations discussed immediately above. Accordingly, the same analysis applies to the multiple claims contained within this cause of action, and the trial court erred in striking it outright.

## III

*Murray's Other Arguments*

A.     *"Misuse" of the Anti-SLAPP Law*

Though unclear, it appears Murray seeks to raise the distinct argument that defendant is not an "intended recipient of the benefits" of the anti-SLAPP statute because it is a governmental entity. Such an argument is unpersuasive. (See *USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53, 62 [" 'the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials . . . that would fall within the scope of the statute if such statements were made by a private individual or entity' "]; cf. *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 776 ["We do not assert that the distinction between individual and organizational defendants constitutes a formal element of the anti-SLAPP analysis"].)

B.     *Constitutionality of the Anti-SLAPP Law*

Murray contends the anti-SLAPP statute violates a constitutional right to trial. We decline to address this argument that Murray could have raised in her opening brief, but raised for the first time in her reply brief. (See *Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 648, fn. 10.)

C.     *Remaining Arguments*

Our ruling moots Murray's arguments the trial court erred in its second-step analysis and in denying leave to amend the complaint.**6**

## DISPOSITION

The order granting the anti-SLAPP motion is reversed.  We direct the trial court on remand to enter a new order denying the motion.  Murray is entitled to recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


                                      /s/
                              BOULWARE EURIE, J.


We concur:


    /s/
RENNER, Acting P. J.


    /s/
EARL, J.

---

**6** Our holding moots Murray's argument regarding the trial court's denial of leave to amend because the denial depended on the trial court's anti-SLAPP ruling, which we now reverse.  But we agree with defendant that if the trial court's anti-SLAPP ruling were proper, denial of leave to amend also would have been correct.  (*Finato v. Keith A. Fink & Associates* (2021) 68 Cal.App.5th 136, 149.)

Murray indicates in her appellate briefing she hopes to include new causes of action in her complaint.  That is a matter for the trial court's discretion in the first instance, on remand.  (See *Branick v. Downey Savings & Loan Assn*. (2006) 39 Cal.4th 235, 242-243 [the discretion to be exercised in considering whether to grant leave to amend in the first instance belongs to the trial court, not a reviewing court].)