[No. H035207. Sixth Dist. Nov. 18, 2011.]

ANGELINA MORFIN VARGAS et al., Plaintiffs and Appellants, v.
CITY OF SALINAS et al., Defendants and Respondents;
STEVEN J. ANDRE, Movant and Appellant.

---

Counsel

Law Office of Steven J. Andre and Steven J. Andre for Plaintiffs and Appellants and for Movant and Appellant.

Law Offices of Manuel S. Klausner, Manuel S. Klausner; Anthony T. Caso, John Eastman and Karen J. Lugo for Center for Constitutional Jurisprudence as Amicus Curiae on behalf of Plaintiffs and Appellants and Movant and Appellant.

Bryan Cave and Robert N. Treiman for Californians Aware, The First Amendment Project and The First Amendment Coalition as Amici Curiae on behalf of Plaintiffs and Appellants and Movant and Appellant.

Vanessa W. Vallarta, City Attorney; Law Offices of Joel Franklin and Joel Franklin for Defendants and Respondents.

---

Opinion

PREMO, J.—Plaintiffs Angelina Morfin Vargas and Mark Dierolf sued defendants City of Salinas and city manager, David Mora (collectively City), for alleged misuse of public funds. The suit was dismissed as a SLAPP[1] under Code of Civil Procedure section 425.16, the so-called anti-SLAPP law.[2] The ensuing judgment was affirmed by this court and by the Supreme Court. (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1 [92 Cal.Rptr.3d 286, 205 P.3d 207] (*Vargas I*).) Plaintiffs now appeal from postjudgment attorney fees orders.

Plaintiffs moved for attorney fees under section 1021.5, the private attorney general statute. Even though they lost on the merits, plaintiffs argued that their action was brought in the public interest and, since the Supreme Court had agreed with their legal analysis, they were "successful" for purposes of section 1021.5. City moved for attorney fees under section 425.16, subdivision (c), which provides for a mandatory award of attorney fees to a defendant prevailing on an anti-SLAPP motion.[3] Plaintiffs opposed City's

---

[1] SLAPP is an acronym for strategic lawsuit against public participation. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

[2] Further unspecified section references are to the Code of Civil Procedure.

[3] Section 425.16, subdivision (c)(1) provides in full: "Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special

motion on the ground that an award of attorney fees to a government defendant unconstitutionally chills the right of petition absent a finding that the suit fits the "sham" exception to the *Noerr-Pennington* doctrine.[4] The trial court denied plaintiffs' motion and granted City's motion. We shall affirm.

## I. *Background*

Plaintiffs were supporters of a ballot measure that would have repealed City's utility tax. (*Vargas I, supra*, 46 Cal.4th at pp. 7, 14.) Prior to the election, City issued a report and published several articles describing the impact upon municipal services if the measure were enacted. (*Id.* at p. 13.) Plaintiffs sued. They alleged that the publications were campaign materials for which City may not lawfully expend public funds and not merely informational material, which may be produced at public expense. (See *Stanson v. Mott* (1976) 17 Cal.3d 206 [130 Cal.Rptr. 697, 551 P.2d 1].)

The trial court granted City's special motion to strike under section 425.16, finding that the case arose from City's exercise of protected speech in connection with a public issue and that plaintiffs had no probability of prevailing on the claim. Judgment was entered in favor of City. On appeal, this court rejected plaintiffs' argument that we should examine the style, tenor, and timing of the material to determine whether it was campaign literature within the meaning of *Stanson v. Mott, supra*, 17 Cal.3d 206. We decided that the proper test was whether the material expressly advocated a particular election result. Because the challenged material did not expressly advocate a position on the ballot measure, we affirmed the judgment. (*Vargas I, supra*, 46 Cal.4th at p. 15.) The Supreme Court in *Vargas I* disagreed with our analysis, concluding that the style, tenor, and timing standard was the appropriate one. Nevertheless, even under that standard, City's publications were not campaign materials and, therefore, plaintiffs could not demonstrate a probability of prevailing. Accordingly, *Vargas I* affirmed the judgment. (*Id.* at p. 41.)

Following issuance of the remittitur, plaintiffs filed an unsuccessful motion for new trial. Thereafter, both sides filed motions for attorney fees. In denying

---

motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

[4] *Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127, 135–144 [5 L.Ed.2d 464, 81 S.Ct. 523] (*Noerr*); *Mine Workers v. Pennington* (1965) 381 U.S. 657, 669–672 [14 L.Ed.2d 626, 85 S.Ct. 1585] (*Pennington*).

plaintiffs' fee motion the trial court stated, "Plaintiffs lost their case before the trial court and on appeal. After review and consideration of the record and the arguments, the Court determines that Plaintiffs' efforts did not result in the enforcement of an important right affecting the public interest, nor confer a significant benefit on the public or large class of persons." The trial court rejected plaintiffs' constitutional arguments opposing City's motion, citing *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174 [118 Cal.Rptr.2d 330] (*Schroeder*). With only minor modifications, the court found that the fees requested were "reasonable, . . . not excessive or duplicative." The court awarded City a total of $226,928 in attorney fees and $2,495.84 in costs.

## II. Contentions[5]

There are two main issues on appeal. The first is whether, under the circumstances of this case, plaintiffs may be deemed successful parties for purposes of a section 1021.5 attorney fees award.[6] The second is whether an award of attorney fees to a public entity defendant under the anti-SLAPP law chills the constitutional right of petition.

## III. Discussion

### A. The Refusal to Award Fees to Plaintiffs

██ Section 1021.5 is a discretionary fee-shifting provision. It provides, in pertinent part: "Upon motion, a court may award attorneys' fees to *a successful party* against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public

---

[5] We have received and considered two amicus curiae briefs in support of plaintiffs. One brief is filed by Californians Aware, First Amendment Project, and First Amendment Coalition, and the other by Center for Constitutional Jurisprudence, Libertarian Law Council, and Reason Foundation. We appreciate the cogent analyses presented in both briefs and have addressed the principal arguments raised within the discussion that follows.

[6] In connection with the section 1021.5 motion, plaintiffs' counsel moved to intervene on the ground that his fee agreement with plaintiffs entitled him to any attorney fees that might be awarded in plaintiffs' favor. The trial court did not expressly rule on the motion to intervene and counsel argues on appeal that this was error. We need not consider the argument beyond noting that, since we affirm the trial court's order denying the section 1021.5 motion, counsel was not prejudiced by the lack of a ruling on the intervention motion.

entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (Italics added.)

The fundamental objective of the private attorney general doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1289 [240 Cal.Rptr. 872, 743 P.2d 932].) "[W]hether a party has met the statutory requirements for an award of attorney fees is best decided by the trial court, whose decision we review for abuse of discretion. [Citation.] On review, we focus on whether the court applied the proper legal standards under section 1021.5 and, if so, whether the result was within the range of the court's discretion." (*Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381 [114 Cal.Rptr.3d 351] (*Ebbetts Pass II*).)

The preliminary consideration under section 1021.5 is the plaintiff's success. Notwithstanding the judgment against them, plaintiffs maintain that this case meets all the elements required for a section 1021.5 attorney fee award, including the requirement of success. Plaintiffs were successful, they say, because they succeeded in having *Vargas I* reject the "express advocacy" test. It is true that a court may find a plaintiff was successful under section 1021.5 absent a favorable final judgment, but in order to do so, the court must generally find that the plaintiff obtained relief in some other way. Under *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 567 [21 Cal.Rptr.3d 331, 101 P.3d 140], a plaintiff is a successful party whenever he or she obtains the relief sought in the lawsuit, regardless of whether that relief is obtained " 'through a "voluntary" change in the defendant's conduct, through a settlement, or otherwise.' " To be deemed successful under *Graham*, the plaintiff must establish that the lawsuit was a catalyst motivating the defendant to provide the primary relief sought and that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by threat of expense. (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608 [21 Cal.Rptr.3d 371, 101 P.3d 174].) Here, plaintiffs obtained no relief and their lawsuit had no merit. City never changed its position. ■ The superior court, the appellate court, and the Supreme Court all agreed that publication of the challenged material was not a misuse of public funds. This is not success. The fact that the Supreme Court accepted part of plaintiffs' legal analysis does not change that.[7]

---

[7] Plaintiffs were not wholly successful in their legal argument, either. The Supreme Court rejected plaintiffs' contention that material is campaign material if it fails to present a neutral analysis of the pending ballot measure. *Vargas I* agreed with those appellate decisions "that explicitly have held that *Stanson* [*v. Mott, supra,* 17 Cal.3d 206] does not preclude a governmental entity from publicly expressing an opinion with regard to the merits of a

A similar situation was considered by the court in *Ebbetts Pass II, supra,* 187 Cal.App.4th 376. In that case, two environmental groups had challenged the approval of a timber harvesting plan they claimed violated certain environmental laws. Upon review of the judgment, the Supreme Court agreed with the plaintiffs' preliminary contentions but decided the merits against them. (*Ebbetts Pass Forest Watch v. California Dept. of Forestry & Fire Protection* (2008) 43 Cal.4th 936 [77 Cal.Rptr.3d 239, 183 P.3d 1210].) In subsequent proceedings the trial court denied the plaintiffs' motion for attorney fees under section 1021.5 and *Ebbetts Pass II* upheld that decision. The appellate court concluded that to find the plaintiffs successful under the circumstances "would be an unwarranted expansion of section 1021.5." (*Ebbetts Pass II, supra,* at p. 388.) The plaintiffs lost "because the record did not justify their winning under the law. While it may be argued that their contentions resulted in clarification of legal issues, the fact remains that contentions do not supplant evidence. The real problem is that regardless of the expansion of the law, they did not have a factually meritorious lawsuit and, when the dust settled, their only victory was in a statement of law that when applied to the record clarified why they should lose." (*Id.* at pp. 387–388.) The same analysis applies here. The trial court correctly focused upon plaintiffs' lack of success and did not abuse its discretion in refusing to require defendants to pay plaintiffs' legal fees under those circumstances.

### B. *The Award of Attorney Fees to Defendants*

#### 1. *Question Presented and Standard of Review*

██ The anti-SLAPP law was enacted to expedite the dismissal of SLAPP's. (*USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53, 61 [108 Cal.Rptr.3d 466] (*USA Waste*).) Under section 425.16, subdivision (b)(1), a SLAPP is a lawsuit "arising from any act of [a] person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" and is subject to a special motion to strike "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) Under section 425.16, subdivision (c), an award of attorney fees to a defendant prevailing on a special motion to strike is mandatory; a prevailing plaintiff is entitled to

proposed ballot measure, so long as it does not expend public funds to mount a campaign on the measure." (*Vargas I, supra,* 46 Cal.4th at p. 36.)

fees only upon proof that the defendant's motion was frivolous or solely intended to cause unnecessary delay.

■ Plaintiffs assert throughout their briefs that the anti-SLAPP law does not apply to their suit against City, arguing that the government does not have a constitutional right to free speech and that section 425.17 exempts public interest suits like this one from the scope of the anti-SLAPP law. But *Vargas I* expressly concluded that this case is subject to the anti-SLAPP law. In particular, the Supreme Court held, "Whether or not the First Amendment of the federal Constitution or article I, section 2 of the California Constitution *directly* protects government speech in general or the types of communications of a municipality that are challenged here—significant constitutional questions that we need not and do not decide—we believe it is clear, in light of both the language and purpose of California's anti-SLAPP statute, that the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity." (*Vargas I, supra*, 46 Cal.4th at p. 17.)

Although plaintiffs suggest that issues upon which the Supreme Court did not expressly rule may be raised in this appeal, the law of the case doctrine binds us to the conclusion reached in *Vargas I*. (*De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 906 [114 Cal.Rptr.2d 708]; *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 654 [32 Cal.Rptr.3d 266].) Accordingly, we do not consider plaintiffs' arguments that turn upon section 425.17 or any other legal principles to the extent the arguments advance the claim that this suit is exempt from the anti-SLAPP law. We proceed on the understanding that the suit is a SLAPP; it arose from City's exercise of protected speech activity; and plaintiffs were unable to show any probability of prevailing on their claim.

The remaining question presented is whether section 425.16, subdivision (c), infringes a plaintiff's constitutional right of petition by providing for mandatory fee awards to prevailing government defendants. Plaintiffs maintain that the right of petition, as exercised in a lawsuit against the government, is entitled to special protection that does not extend to lawsuits against private parties. Because it is a constitutional issue, our review is de novo.

(*State of Ohio v. Barron* (1997) 52 Cal.App.4th 62, 67 [60 Cal.Rptr.2d 342]; *Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433 [9 Cal.Rptr.3d 257].)[8]

### 2. The Right of Petition

█ The right to petition the government for redress of grievances is protected by both the federal and state Constitutions. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 3.) The right includes the right to petition the executive or legislative branches directly. As pertinent here, the right has also been construed as encompassing the right to petition the judicial branch for resolution of legal disputes. (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 510 [30 L.Ed.2d 642, 92 S.Ct. 609]; *Borough of Duryea v. Guarnieri* (2011) 564 U.S. ___ [180 L.Ed.2d 408, 131 S.Ct. 2488]; cf. *id.*, 564 U.S. at p. ___ [131 S.Ct. at p. 2503] (conc. & dis. opn. of Scalia, J.) ["The Court has never actually *held* that a lawsuit is a constitutionally protected 'Petition . . . .' "].)

While the right of petition "is accorded 'a paramount and preferred place in our democratic system' " (*City of Long Beach v. Bozek* (1982) 31 Cal.3d 527, 532 [183 Cal.Rptr. 86, 645 P.2d 137] (*Bozek*), judg. vacated and cause remanded (1983) 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], reiterated (1983) 33 Cal.3d 727, 728 [190 Cal.Rptr. 918, 661 P.2d 1072]), the right has never been absolute (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 56 [61 Cal.Rptr.2d 694] (*Wolfgram*)). "[B]aseless litigation is not immunized by the First Amendment right to petition." (*Bill Johnson's Restaurants, Inc. v. NLRB* (1983) 461 U.S. 731, 743 [76 L.Ed.2d 277, 103 S.Ct. 2161].) Reasonable, narrowly drawn restrictions designed to prevent abuse of the right can be valid. (*Wolfgram, supra*, at p. 57.)

*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*), held, as a general matter, that the anti-SLAPP law as a whole does not impermissibly chill the right of petition. *Equilon* rejected the argument that a defendant should have to prove the

---

[8] We summarily dispose of City's argument that plaintiffs have waived or are estopped from raising the constitutional argument because they failed to raise it in opposition to a previous attorney fees motion. "The sine qua non of estoppel is that the party claiming it relied to its detriment on the conduct of the party to be estopped." (*Orange County Water Dist. v. Association of Cal. Water etc. Authority* (1997) 54 Cal.App.4th 772, 780 [63 Cal.Rptr.2d 182].) City cannot show detrimental reliance. Nor is this a case where a party has raised the issue for the first time on appeal. (*Bardis v. Oates* (2004) 119 Cal.App.4th 1, 13, fn. 6 [14 Cal.Rptr.3d 89].) Plaintiffs raised the issue in opposition to the instant motion and the trial court rejected the argument on its merits. There was no waiver.

plaintiff's bad faith in order to prevail on an anti-SLAPP motion to strike because that would add a needless burden to the defendant whose rights the law was intended to protect. Refusing to impose such a requirement "will not allow the anti-SLAPP statute itself to become a weapon to chill the exercise of protected petitioning activity by people with legitimate grievances. The anti-SLAPP remedy is not available where a probability exists that the plaintiff will prevail on the merits. (§ 425.16, subd. (b).) 'The Legislature, moreover, has provided, and California courts have recognized, substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism.' (*Briggs*[ *v. Eden Council for Hope & Opportunity* (1999)] 19 Cal.4th [1106], 1122–1123 [81 Cal.Rptr.2d 471, 969 P.2d 564].)" (*Id.* at p. 65.)

### 3. *The* Noerr-Pennington *Doctrine*

Plaintiffs maintain that even if there is no constitutional problem when applied to suits against private parties, which was the case in *Equilon*, suits against the government are entitled to special protection. According to plaintiffs, SLAPP suits against government defendants should not be subject to a mandatory award of attorney fees unless they fit the "sham" exception to the *Noerr-Pennington* doctrine.

"The *Noerr-Pennington* doctrine is a broad rule of statutory construction, under which laws are construed so as to avoid burdening the constitutional right to petition." (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1064 [99 Cal.Rptr.3d 661] (*Tichinin*).) The cases of *Noerr* and *Pennington* held that concerted efforts to influence legislation or executive branch regulation could not be a violation of the Sherman Act (15 U.S.C. § 1 et seq.). (*Noerr, supra,* 365 U.S. at p. 129; *Pennington, supra,* 381 U.S. 657.) Construing the Sherman Act to reach such conduct "would raise important constitutional questions" concerning the right of petition. (*Noerr, supra,* at p. 138.) The doctrine has since been extended to virtually all civil liability for legitimate petitioning activity. (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 965 [70 Cal.Rptr.3d 501] [describing the expansive scope of the doctrine].) There is no *Noerr-Pennington* immunity, however, if the person's petitioning activity is a "sham." (*Ibid.*) The sham exception to the *Noerr-Pennington* doctrine has two prongs. It "requires proof that a petition (or court pleading) is objectively baseless *and* motivated by an improper anticompetitive purpose." (*Tichinin, supra,* at p. 1066.)

The *Noerr-Pennington* doctrine has no application in this case. The doctrine immunizes legitimate petitioning activity from civil liability but fee shifting is not civil liability within the meaning of the *Noerr-Pennington* doctrine. As our Supreme Court held in *Equilon*, being charged with the costs of a suit is not the same thing as being civilly liable for having filed the suit. In *Equilon, supra*, 29 Cal.4th at page 62, the plaintiff had argued that fee shifting in a SLAPP case offended the right of petition absent proof that the suit was motivated by the plaintiff's intent to chill the defendant's exercise of protected rights. In so arguing, the plaintiff relied upon *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* (1993) 508 U.S. 49 [123 L.Ed.2d 611, 113 S.Ct. 1920] (*Professional Real Estate*), a *Noerr-Pennington* case. *Equilon* did not discuss the *Noerr-Pennington* doctrine by name, but the court distinguished *Professional Real Estate* on the civil liability issue, pointing out that an award of attorney fees to the prevailing party does not make a party *liable* for filing a lawsuit. *Professional Real Estate* did not apply because it concerned only the scope of antitrust liability. (*Equilon, supra*, at p. 62.) The fee-shifting provision of section 425.16, subdivision (c) "simply requires the party that creates the costs to bear them." (*Equilon, supra*, at p. 62, citing *Premier Electrical Construction Co. v. National Electrical Contractors Assn., Inc.* (7th Cir. 1987) 814 F.2d 358, 373 (*Premier*); see also *Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 361 [9 Cal.Rptr.3d 197].)

We are bound by *Equilon*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Because the fee-shifting provision of section 425.16, subdivision (c) does not impose civil liability for filing the lawsuit, it does not implicate the *Noerr-Pennington* doctrine.

### 4. *The Constitutionality of Section 425.16, Subdivision (c) as Applied to Government Defendants*

Regardless of whether the *Noerr-Pennington* doctrine is directly applicable, plaintiffs argue that, given the paramount importance of the right to petition the government for redress of grievances, a SLAPP suit against a government defendant should not be subject to a mandatory award of attorney fees unless it fits the "sham" exception to the *Noerr-Pennington* doctrine, namely, that it is objectively baseless and improperly motivated. Amici curiae urge us to impose an objectively baseless standard. "Objectively baseless," within the meaning of the *Noerr-Pennington* doctrine, means that "no reasonable litigant could realistically expect success on the merits." (*Professional Real Estate, supra*, 508 U.S. at p. 60.) The parties presume, and we accept for purposes of this appeal, that a SLAPP, which is a suit that lacks any probability of success, is not necessarily objectively baseless or frivolous.

■ We recognize that our Supreme Court has granted special status to suits against the government in *Bozek, supra*, 31 Cal.3d 527, but *Bozek* does not stand for the proposition that meritless suits against the government are constitutionally immune from fee shifting. *Bozek* held that plaintiffs who sue the government are immune from liability for malicious prosecution whereas plaintiffs who sue private parties do not enjoy such protection. *Bozek* weighed the government's interest in discouraging malicious suits against the chilling effect of a malicious prosecution lawsuit and concluded that, since the government's principal reason for filing a malicious prosecution suit is to be reimbursed for the cost of defending the prior malicious suit, and since that interest is fully protected by available statutory remedies, a government initiated suit for malicious prosecution was unnecessary and retaliatory. (*Id.* at p. 538.) By specifically allowing for recovery of attorney fees under the pertinent statutes, *Bozek* confirmed that an award of attorney fees in favor of a government defendant does not per se violate a plaintiff's constitutional right of petition. Indeed, what *Bozek* teaches is that the individual's right to sue the government does not come free of cost. (See *Premier, supra*, 814 F.2d at p. 373 ["The exercise of rights may be costly, and the first amendment does not prevent the government from requiring a person to pay the costs incurred in exercising a right."].)

Plaintiffs argue that since the statutory remedies to which *Bozek* referred were sections 128.5 and 1021.7, both of which require proof of bad faith, *Bozek* implicitly requires proof that a lawsuit is a sham before a government defendant may recoup its attorney fees. *Bozek* does not reach that far. *Bozek* involved allegedly malicious or bad faith litigation for which the city was seeking a remedy. The court had no occasion to decide whether the government is entitled to its fees in any other case. We do not dismiss the notion that a fee-shifting clause can discourage the filing of some lawsuits. Indeed, that is precisely what such clauses are frequently designed to do. But to the extent section 425.16, subdivision (c) imposes an incidental restriction upon legitimate petitioning rights, it is warranted by the governmental interests involved.

■ The tests used to evaluate the constitutionality of a law restricting the right to petition are drawn from the free speech cases. In *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 155 [67 Cal.Rptr.3d 228] (*Mejia*), the defendant argued that an award of attorney fees to a prevailing plaintiff under section 1021.5 infringed the opposing party's right to petition. The appellate court analyzed the argument using free speech analysis. *Mejia* noted that laws regulating speech based upon its content are tested under the strict scrutiny standard. (*Mejia, supra*, at p. 162, citing *Wayte v. United States* (1985) 470 U.S. 598, 610, fn. 11 [84 L.Ed.2d 547, 105 S.Ct. 1524] and *United*

*States v. Playboy Entertainment Group, Inc.* (2000) 529 U.S. 803, 813 [146 L.Ed.2d 865, 120 S.Ct. 1878] (*Playboy Entertainment*).) "Under strict scrutiny, a content-based regulation is permissible only if it is narrowly tailored and the least restrictive means to serve a compelling government interest." (*Mejia, supra*, at p. 162, citing *Ward v. Rock Against Racism* (1989) 491 U.S. 781, 791 [105 L.Ed.2d 661, 109 S.Ct. 2746] and *Playboy Entertainment, supra*, at p. 813.) An intermediate standard applies to laws that cause some incidental restriction on speech protected by the First Amendment. That standard was articulated by *United States v. O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 88 S.Ct. 1673], which explained that when a government regulation results in incidental limitations upon First Amendment freedoms the regulation may be justified "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*O'Brien*, at p. 377.) Applying the *O'Brien* test to the attorney fee provision of section 1021.5, *Mejia* found no constitutional problem. (*Mejia, supra*, at p. 163.)

██ The only published case directly considering the issue before us is *Schroeder, supra*, 97 Cal.App.4th 174. *Schroeder* held that section 425.16, subdivision (c), when applied in favor of a government defendant, did not infringe the plaintiff's right to petition because it was "narrowly drawn to achieve a substantial governmental interest that is content neutral and unrelated to the suppression of the exercise of First Amendment rights." (*Schroeder, supra*, at p. 196.) We agree with *Schroeder*.

There is no dispute that enactment of section 425.16, subdivision (c) was within the Legislature's constitutional power or that the subdivision is not a direct restriction upon the right to petition. And it is justified by two substantial governmental interests. One interest is the government's right to be reimbursed for the cost of defending meritless suits, which was the interest at issue in *Bozek, supra*, 31 Cal.3d 527. The government—and by extension, the taxpayer—has a substantial interest in avoiding unnecessary drains upon the public fisc occasioned by meritless lawsuits. The other interest, which is the interest protected by the anti-SLAPP law as a whole, is the government's right to express itself on issues important to the public. Section 425.16, subdivision (c) advances that interest by providing a disincentive to filing meritless suits attacking governmental speech activities.

Plaintiffs and amici curiae argue that the goal of discouraging SLAPP's is not as compelling in the case of a government defendant as it is in the case of private defendants. This is so, they say, because the First Amendment does

not apply to government speakers. As we understand the point, the contention is not that the anti-SLAPP law does not apply to government defendants; *Vargas I* set that contention to rest. (*Vargas I, supra,* 46 Cal.4th at p. 17.) The argument is that because the First Amendment does not apply to government speakers the government's right to speak warrants less protection than an individual's right to speak and, therefore, that a plaintiff suing the government deserves more deference than one who sues a private party.

 Plaintiffs are correct that the First Amendment does not explicitly grant the government the right to speak.[9] That does not mean, however, that citizens are empowered to individually regulate governmental speech. In our system of government, the principal method for controlling the content of government speech is through the ballot box. "When the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position." (*Board of Regents of Univ. of Wis. System v. Southworth* (2000) 529 U.S. 217, 235 [146 L.Ed.2d 193, 120 S.Ct. 1346].)

Although the government's right to speak is a concept that has yet to be fully developed by the United States Supreme Court (Corbin, *Mixed Speech: When Speech is Both Private and Governmental* (2008) 83 N.Y.U. L.Rev. 605, 611 (Corbin)), it suffices for present purposes to observe that the government certainly has the freedom to speak. "Indeed, it is not easy to imagine how government could function if it lacked this freedom. 'If every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the process of government as we know it radically transformed.' *Keller* v. *State Bar of Cal.,* 496 U.S. 1, 12–13 [110 L.Ed.2d 1, 110 S.Ct. 2228] (1990). See also *Johanns*[ v. *Livestock Marketing Assn.* (2005)] 544 U.S.[ 550,] 574 [161 L.Ed.2d 896, 125 S.Ct. 2055] (Souter, J., dissenting) ('To govern, government has to say something, and a First Amendment heckler's veto of any forced contribution to raising the government's voice in the "marketplace of ideas" would be out of the question' (footnote omitted))." (*Pleasant Grove City v. Summum* (2009) 555 U.S. 460, 468 [172 L.Ed.2d 853, 129 S.Ct. 1125].)[10] In short, regardless of its source, the government's right to speak is a substantial interest to be protected.

---

[9] By its terms, the free speech clause of the First Amendment is a direct restriction of government power: "Congress shall make no law . . . abridging the freedom of speech . . . ." (U.S. Const., 1st Amend.)

[10] "The government's ability to say what it likes is not absolute. Although free speech commentators still debate the degree to which the government should be able to weigh in with its own viewpoint in the marketplace of ideas, especially on controversial topics like abortion,

■ While the law at issue is related to suppression of meritless petitions, the First Amendment does not protect baseless litigation. (*Bill Johnson's Restaurants, Inc. v. NLRB, supra*, 461 U.S. at p. 743.) Thus, the law is unrelated to suppression of legitimate First Amendment activity. Indeed, the purpose of the law is to protect such activity exercised by the SLAPP targets. To the extent section 425.16, subdivision (c) might chill some legitimate petitioning activity, it is settled that the right of petition may be restricted by a narrowly drawn regulation designed to protect others' exercise of protected rights. As *Wolfgram, supra*, 53 Cal.App.4th at page 56 held: "[T]he general right of persons to file lawsuits—even suits against the government—does not confer the right to clog the court system and impair everyone else's right to seek justice." Thus, the vexatious litigant statutes may constitutionally impose special requirements upon litigants who abuse the system. (*Ibid.*; see § 391 et seq.) And *Simpson v. Municipal Court* (1971) 14 Cal.App.3d 591, 598 [92 Cal.Rptr. 417], held that Penal Code section 171f, which makes even peaceable picketing in the State Capitol building unlawful, was not a First Amendment violation because, among other things, picketing in that particular place "would tend to chill and repress the views of others." (*Simpson*, at p. 598.)

■ Under section 425.16, subdivision (c), the plaintiff will be required to pay the government's attorney fees only if the plaintiff cannot demonstrate that the complaint "is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446], disapproved in part on other grounds in *Equilon, supra*, 29 Cal.4th at p. 68, fn. 5.) This is not a high bar. If the plaintiff fails to clear that bar the suit, by definition, is not worthy. (Cf. *Wolfgram, supra*, 53 Cal.App.4th at p. 57.) Imposing the costs of defending such suits upon the persons responsible for filing them discourages the filing of such suits in the first place. By reducing the likelihood of such suits, and insuring that the government will be reimbursed for its defense of those that are filed, section 425.16, subdivision (c) protects the government's right to speak and the interest of the general public to hear what its government has to say, thereby fostering public discourse on topics of public interest.

Section 425.16, subdivision (c) is no broader than necessary to advance these significant governmental interests. Requiring a finding that the suit was objectively baseless or improperly motivated before a prevailing government

the establishment clause of the U.S. Constitution unambiguously makes one controversial topic—religious truth—completely off-limits." (Corbin, *supra*, 83 N.Y.U. L.Rev. at pp. 615–616, fns. omitted.)

defendant could recover its attorney fees would reduce the law's effectiveness in protecting the interests identified. It would add a burden to the prevailing government defendant and wholly prevent reimbursement in meritless cases that may not descend to the level of frivolousness. And given the difficulty that often arises in drawing a line between the merely meritless and the actually frivolous (cf. *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179]) such a requirement would add a degree of uncertainty to the attorney fees analysis. All of this would dilute the effectiveness of section 425.16, subdivision (c) as a disincentive to filing a SLAPP, the threat of which could inhibit public discourse.

Citing *USA Waste, supra*, 184 Cal.App.4th 53 and *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207 [104 Cal.Rptr.3d 692] (*Graffiti Protective Coatings*), amici curiae argue that the anti-SLAPP law is so broad and uncertain, and that government action is so frequently related to the public interest, that a mandatory award of attorney fees under section 425.16, subdivision (c) is particularly likely to chill even legitimate suits against the government. We disagree. In both cited cases the appellate courts held that the government activity sued upon did not meet the first prong of the anti-SLAPP analysis. Accordingly, the suits were not SLAPP's and, therefore, could not be dismissed under section 425.16. (*USA Waste, supra*, at pp. 65–66; *Graffiti Protective Coatings, supra*, at pp. 1224–1225.)

In *Graffiti Protective Coatings*, the plaintiff had sued the city for its failure to use a competitive bidding process in awarding a painting contract. The appellate court held that the anti-SLAPP law did not apply because the case was based upon the city's conduct of the bidding process, which was not activity to which the anti-SLAPP laws applied. "Were we to hold otherwise, we 'would significantly burden the petition rights of those seeking mandamus review for most types of governmental action.' " (*Graffiti Protective Coatings, supra*, 181 Cal.App.4th at p. 1224, quoting *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 357–358 [22 Cal.Rptr.3d 724].)

*USA Waste* reached a similar conclusion in a suit challenging the city's application of its land use guidelines. After rejecting the city's contention that the suit was subject to the anti-SLAPP law, the appellate court concluded: "The original purpose of the anti-SLAPP statute was to protect nonprofit corporations and common citizens 'from large corporate entities and trade associations' in petitioning government [citation]. But now it has been broadened to protect large corporations and trade associations [citation], and

even governmental entities 'when such entities are sued on the basis of statements or activities engaged in by the public entity or its public officials in their official capacity.' (*Vargas v. City of Salinas, supra*, 46 Cal.4th at p. 17.) To extend the anti-SLAPP statute to litigation merely challenging the application, interpretation, or validity of a statute or ordinance would expand the reach of the statute way beyond any reasonable parameters." (*USA Waste, supra*, 184 Cal.App.4th at p. 66.)

Plaintiffs argue that in order to address the concerns expressed in *USA Waste* and *Graffiti Protective Coatings*, fee awards to government defendants should be contingent upon additional findings beyond just lack of merit. The argument misses the point of these two cases. *USA Waste* and *Graffiti Protective Coatings* merely apply the substantive limitations of the anti-SLAPP law to cases involving public entity defendants. In other words, these cases describe situations that fall outside the scope of the anti-SLAPP statute. Section 425.16, subdivision (c) applies only to suits that fall within the scope of the anti-SLAPP statute.

In sum, the government has an interest in speaking out on issues of public concern and in being free of the costs of defending meritless lawsuits aimed at infringing the government's free speech activities. Section 425.16, subdivision (c) protects the government's interests by shifting the cost of defending such suits to the plaintiff. If the subdivision chills legitimate petitioning activity, it is merely incidental to and outweighed by the significant governmental interests the statute is designed to protect. Accordingly, section 425.16, subdivision (c) is not an unconstitutional infringement of the right of petition when applied in cases against the government.

### 5. The Amount of the Fee Award

#### (a) Fees for the Work of Associate Counsel

Plaintiffs maintain that the trial court erred in awarding the same hourly rate for both senior appellate counsel and associate appellate counsel and, as a result, the attorney fee award should be reduced by $30,069.90. We are unable to decipher plaintiffs' reasoning. Plaintiffs' argument contains several arithmetical calculations based upon an understanding of the fee award that plaintiffs fail to explain. Plaintiffs have not directed us to where in the record we may find the figures upon which they rely. Given the absence of comprehensible argument and citation to the pertinent record we treat the point as waived. (*Colt v. Freedom Communications, Inc.* (2003) 109 Cal.App.4th 1551, 1560–1561 [1 Cal.Rptr.3d 245].)

(b) *Fees Incurred Opposing Plaintiffs' Motion for Fees*

Plaintiffs argue that under section 425.16, subdivision (c), City is entitled only to fees incurred in connection with the section 425.16 motion, and not to fees incurred by opposing plaintiffs' attorney fees motion under section 1021.5. Plaintiffs rely upon *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383 [46 Cal.Rptr.2d 542], which reversed a trial court order awarding attorney fees for defense of the entire suit. But the entire suit in that case consisted of seven causes of action, only one of which was subject to the section 425.16 motion. (See *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 861 [44 Cal.Rptr.2d 46].) In the present case, all of plaintiffs' case was dismissed pursuant to section 425.16. (*Vargas I, supra*, 46 Cal.4th at p. 19.) Accordingly, fees incurred postjudgment were incurred in connection with the section 425.16 motion.

Plaintiffs also argue that City waived its right to attorney fees for opposing plaintiffs' attorney fees motion because City only raised the issue in a supporting declaration. The declaration was more than adequate, setting forth all the work counsel's office had performed and concluding, "In addition, we have spent and will further spend [time] addressing Plaintiffs' motion to recover their attorneys' fees in this matter. [¶] I will submit a Supplemental Declaration with the City's reply papers on its motion for an award of attorneys' fees and costs, detailing the hours spent and fees incurred in connection with its motion for attorneys' fees and Plaintiffs' motion . . . ." There was no waiver.

(c) *Costs*

Plaintiffs challenge the costs designated in City's papers as "Costs to File Briefs and Other Papers: $231.96 (Rule 8.278, subd. (d)(1)(D))" on the ground it was not a filing fee but, as counsel admitted orally, was the charge for delivering briefs to the Supreme Court. California Rules of Court, rule 8.278(d)(1)(D) lists as an acceptable cost the cost to serve, mail and file briefs. The trial court did not err in allowing this cost.[11]

---

[11] Plaintiffs' list of issues includes alleged error related to evidence of settlement discussions but their brief does not contain any argument on the point. Accordingly, we do not consider it. (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [27 Cal.Rptr.3d 583].)

## IV. *Disposition*

The trial court's order granting defendants' motion for attorney fees and denying plaintiffs' motion for attorney fees is affirmed. Defendants are entitled to their costs on appeal.

Rushing, P. J., and Elia, J., concurred.

A petition for a rehearing was denied December 12, 2011, and the petition of plaintiffs and appellants for review by the Supreme Court was denied February 29, 2012, S198996. Baxter, J., was of the opinion that the petition should be granted.